**Norma MOSS and Kenneth Moss, Appellants,**

**v.**

**POLYCO, INC., a corporation et al., Appellees.**

**No. 46134.**

Supreme Court of Oklahoma.

April 23, 1974.

As Amended May 10, 1974.

Rehearing Denied June 4, 1974.

Lampkin, Wolfe, Burger, Abel, Mc-Caffrey & Norman, by Ed Abel, Oklahoma City, for appellants.

Ross, Holtzendorff & Bond, Oklahoma City, for appellees, Koppers Co., Inc.; Atlantic-Richfield Co., individually and d/b/a Sinclair-Koppers Co., a partnership and d/b/a National Plastics Co.

LAVENDER, Justice:

The question here is whether the plaintiffs, husband and wife, are precluded

by a statute of limitations from pursuing an action for personal injuries to the wife and resulting loss of consortium to the husband. The plaintiffs say that the injury occurred when a plastic container of VIP Super Drain fell from a shelf and its contents spilled onto the lady's body. According to the petition and briefs, it appears that she was a customer in a restaurant and had gone to the restroom. The offending container of VIP was on a shelf in the restroom and was somehow dislodged and fell onto her. The petition alleges that the container and its cap were defectively constructed by the defendant manufacturer and supplier of the article. and that the defendants had warranted and represented to the plaintiffs that the container and cap were proper for the use for which they were intended. The plaintiffs filed this action against the defendant appellees in the trial court 28 months after the injury occurred.

Both defendants here concerned filed demurrers based on the two year statute of limitations which is found in 12 O.S.1971, § 95 (Third), providing in part that an action for injury to the rights of another, not arising on contract, can only be brought within two years after the cause of action has accrued. The trial court sustained the demurrers based on the proposition that the limitation period is two years for the breach of an implied warranty, the time beginning to run from the occurrence of the injury. The trial court obviously, then, believed that notwithstanding plaintiffs' allegations that defendants had "warranted and represented" to plaintiffs that the container and cap were proper for the use for which they were intended, plaintiffs' actions were for injuries to Mrs. Moss which did not arise out of contract.

Appellants' Proposition I is that the plaintiffs' action is not controlled by the two year statute of limitations, that the action was for breach of an implied warranty, that the trial court relied on a statute that related to the injury rather than the source of duty, and that the cause was based on contract, express or implied not in writing (to which the three year period under 12 O.S.1971 § 95, Second, would be applicable), or it lay under the Uniform Commercial Code for breach of an implied warranty, and the five year period provided in 12A O.S.1971, § 2–725, was applicable. Propositions II and III argue that the referenced five and three year periods are applicable, all arguments being premised on the idea that a cause of action based on breach of implied warranty was properly brought.

The Court of Appeals was of the view that plaintiffs' petition alleged a breach of an implied warranty, that a warranty is a promise, that a promise is inherently contractual in nature, that there was therefore alleged a violation of a duty whose source was in contract, and that the cause of action could be brought within three years after it accrued. This has reference to 12 O.S.1971, § 95, Second, pertaining to the limitation period for "An action upon a contract express or implied not in writing." That court then further said, "It is to be noted that in enacting § 2–725 of the UCC [Uniform Commercial Code] the legislature again invoked the source of duty concept in establishing a five year limitation period for bringing breach of warranty actions—actions which include those seeking recovery for personal injury damages." Thus, under the opinion of the Court of Appeals, plaintiffs could also bring their breach of warranty action under the UCC within five years.

■ The defense that a cause is barred by limitations is properly raised by demurrer when the petition or complaint shows on its face that the cause of action was barred (see cases cited, Note 328, 12 O.S. A., § 95), as we believe it was here. We are of the view that the trial court's apparent conclusion that this action is not one arising upon contract but is one based upon an alleged tortious wrong committed by the defendants is correct, and that the two year statute of limitations bars the action.

We are aware, of course, that when the Court of Appeals opinion was written that

court did not have before it our opinion in Kirkland v. General Motors Corp., No. 45,016, promulgated this date, and which appears in Okl., 521 P.2d 1353. We there stated that allegations similar to those made by the plaintiff appellants of "breach of implied warranty of fitness" alleged a cause of action in Manufacturers' Products Liability and that "Because of the tortious origin and nature of the theory . . ., and its independence of any contractual liability based on implied warranty, the applicable limitation period is two (2) years, as designated in 12 O.S.1971 § 95 "third" for actions for injury to the rights of another or to personal property, and limitation begins to run from date of injury." Specifically, see paragraphs 1 and 2 of the Syllabus by the court.

The plaintiffs' causes of action are logically related to the policies and the purposes which caused us to recognize in Kirkland v. General Motors Corp. the existence of strict liability in tort in Oklahoma, which we designate as "Manufacturers' Products Liability." We are referring to the policy expressed in Kirkland of spreading the loss which occurs from defectively manufactured goods to the manufacturer, and from him to the public generally who purchase goods from the manufacturer.[1]

These matters have no relationship to contractual rights. The manufacturer cannot, for example, in his contract of sale limit his responsibility for such liability and have that limitation inhibit persons who have no contractual relations with the manufacturer or seller from recovering their damages. Neither are plaintiffs' actions affected by any contract between the manufacturer and the proprietor of the restaurant where Mrs. Moss was injured, nor between the manufacturer and Mrs. Moss, herself, upon an "implied warranty of fitness" theory. While the UCC does envision allowing recovery for personal injury and for property damages arising out of defectively manufactured articles (12A

O.S.1971, § 2–715(2)(b)), such recovery arises out of contractual relationships, express or implied and as extended by the Legislature to categories of certain third party beneficiaries found in 12A O.S.1971, § 2–318, i. e., any natural person in the family or household of the buyer, or guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods, and who is injured in person by breach of the express or implied warranty.

In passing, it may be noted that there were second and third alternative provisions available for adoption by the Legislature (63 Am.Jur.2d, Products Liability, § 163) more liberal than the first alternative expressed in 12A O.S.1971, § 2–318, and the Legislature chose the more restrictive version. The fact that the UCC draftsmen take no position as to whether the sellers' warranties extend to classes of persons other than those named in the alternative version adopted (Am.Jur.2d, § 163, supra) has no bearing on any legislative restrictive intent that may be inferred from adoption of the particular alternative that the Legislature selected. Nor is the statement in Am.Jur., § 163, supra, that the court has discretion to extend warranty protection beyond such categories of persons named by the Legislature so as to include bystanders, persuasive here.

We believe that the statutory implied warranty sections of the UCC are not applicable in this case. The UCC has to do with commercial transactions (12A O.S. 1971, § 1–102) and presupposes a buyer in privity with a seller, the concept being extended only as provided by the Legislature. The plaintiffs are, by the express terms of the statutory scheme in § 2–318, beyond the scope of the statutory warranty protection. This is in accord with other case law elaboration. Klimas v. International Telephone and Telegraph Corp. (D.C., R.I., 1969), 297 F.Supp. 937. Warranty recovery applies to loss flowing from the com-

---

1. See cases from other jurisdictions relied upon in Kirkland, including Greenman v. Yuba Power Products, Inc. (1963), 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897.

mercial transaction. The UCC parallels the doctrine of strict liability in tort, but the two should not be confused with each other. Caruth v. Mariani (1970), 11 Ariz. App. 188, 463 P.2d 83; Beauchamp v. Wilson (1973), 21 Ariz.App. 14, 515 P.2d 41. The plaintiffs' action falls within the tort category, and since the aforesaid policy reasons for recognizing the doctrine of Manufacturers' Product Liability are met by that doctrine, we perceive no good reason for extending UCC provisions beyond commercial transactions, those injuries—including personal—that flow from such transactions, and as specifically provided by the Legislature.

■ Assuming the non-existence of a valid contract between the plaintiff and a defendant which could possibly, under the terms of the UCC, affect the right of the plaintiff to recover for certain losses, we are of the view that a plaintiff who has suffered damages by reason of a defectively manufactured article may recover under the doctrine of Manufacturers' Product Liability all of the damages which were the reasonable consequences of the defective article to the same extent as if the plaintiff's action was based upon negligence. Should a contract, valid under the UCC limiting plaintiff's right to recover damages for certain items of damage exist however, we know of no reason why such a contract could not be given consideration in the same action in which plaintiff seeks recovery under the doctrine of Manufacturers' Product Liability when the two matters are clearly distinguished by proper instructions. For cases in which both theories were given consideration in the same case see: Hawkeye Security Insurance Co. v. Ford Motor Co. (Iowa, 1972), 199 N.W.2d 373; Hawkins Construction Co. v. Matthews Co., Inc. (1973), 190 Neb. 546, 209 N.W.2d 643.

■ We now point out that the plaintiff, Mrs. Moss, was neither a user nor consumer of the allegedly defective product so as to come within the special liability of seller provision in § 402A of the Restatement of Torts, 2d. Instead she was in the general category of a bystander. In Kirkland v. General Motors Corp., supra, we recognized that the doctrine of Manufacturers' Products Liability should extend to any third party injured as a result of the defect in the product. See Syllabi 10 thereof. However, the plaintiff there was a user, and we now make it clear that the doctrine also applies to bystanders. As was stated by the Texas Supreme Court in Darryl v. Ford Motor Co. (1969), 440 S. W.2d 630, "There is no adequate rationale or theoretical explanation why non-users and non-consumers should be denied recovery against the manufacturer of a defective product. The reason for extending the strict liability doctrine to innocent bystanders is the desire to minimize risks of personal injury and/or property damage. A manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury because of the defective condition. [cases cited]." See also Howes v. Hansen (1972), 56 Wis.2d 247, 201 N.W.2d 825, and Elmore v. American Motors Corp., cited and quoted from infra.

■ In addition to the above, we see no reason the doctrine should not be available against both the manufacturer and retailer, and so hold. Each has a duty to the consuming public [and non-consumers] quite apart from contract obligations. Dippel v. Sciano (1967), 37 Wis.2d 443, 155 N.W.2d 55. As was stated by the California Supreme Court in Elmore v. American Motors Corporation (1969), 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84, quoting from that court's earlier case, Vandermark v. Ford Motor Co. (1964), 61 Cal.2d 256, 37 Cal.Rptr. 896, 391 P.2d 168, "'Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products [citing Greenman v. Yuba Power Products, Inc., supra]. In some cases the retailer may be the only

member of that enterprise reasonably available to the injured plaintiff. In other cases the retailer himself may play a substantial part in insuring that the product is safe or may be in a position to exert pressure on the manufacturer to that end; the retailer's strict liability thus serves as an added incentive to safety. Strict liability on the manufacturer and retailer alike affords maximum protection to the injured plaintiff and works no injustice to the defendants, for they can adjust the costs of such protection between them in the course of their continuing business relationship.' * * * All of the foregoing considerations are as applicable to the bystander's action as that of the purchaser or user, and we are satisfied that the doctrine of strict liability in tort is available in an action for personal injuries by a bystander against the manufacturer and the retailer." This same view was adopted by the Arizona Supreme Court in O. S. Stapley Co. v. Miller (1968), 103 Ariz. 556, 447 P.2d 248. See also Caruth v. Mariani, supra, which comments on Stapley. We agree.

■ We should mention that the doctrine of Manufacturers' Product Liability, being synonymous with the term "strict liability in tort" used in other jurisdictions, might, like it, be misconstrued and, if so, would be a misnomer. It does not make the manufacturer or retailer an insurer, nor does it impose absolute liability. It does eliminate certain common law defenses used in connection with proving implied warranty, and relieves the plaintiff from having to prove specific acts of negligence. Kirkland v. General Motors Corp., supra; Dippel v. Sciano, supra.

■ Implied warranty—originally brought into the tort concept as a basis for protecting a party injured by a defective product, utilized in many cases for that purpose (example, Marathon Battery Co. v. Kilpatrick (Okl.1965), 418 P.2d 900), and commented on many times before and after its rejection in Greenman v. Yuba Power Products, Inc., supra, of course stems from a contract implied by law. Since, as a

contract, it was always foreign to tort actions because it embraced a refusal to permit the manufacturer to define the scope of its own responsibility for defective products, and because liability was not assumed by agreement (Greenman v. Yuba Power Products, Inc.), its now non-existent need in tort actions, as here, makes irrelevant any contract reference arising from implied warranty. Since the concept of a contract has no place in this tort action, the three year period of limitations provided in 12 O.S.1971, § 95, Second, for contracts "express or implied not in writing" is also inapplicable.

Some comment is necessary on two cases relied on by appellants. The first is Nichols v. Eli Lilly & Co. (1973), Tenth Circuit U. S. Court of Appeals, No. 73–1038, a case arising in Oklahoma wherein the purchaser and user of birth control pills brought an action against the manufacturer, which the appellants urge in support of the UCC five year statute of limitations. The cited case involved the purchaser of an article, therefore so far as the case involved the question of applicability of the UCC, it is clearly distinguishable from this case. The second case is Speed Fastners, Inc. v. Newsom (10 Cir., 1967), 382 F.2d 395, a case arising in Oklahoma, cited for the idea that privity has been abolished where an injury has been caused to another due to the breach of an implied warranty, and that the UCC extends beyond those categories of persons named in its § 2–318. In that case the federal court found that the UCC provides for an implied warranty of merchantability and that an injured employee stood in the shoes of his employer for the purpose of bringing an action based on implied warranty. The first finding is, of course, correct. As for the second, the employee would have an action based on the principle of Manufacturers' Products Liability. In our view, the UCC provisions adopted by the Legislature do not extend coverage to him.

Accordingly, neither the five year period of limitations expressed in the Uniform Commercial Code, 12A O.S.1971, § 2–725,

nor the three year period of limitations expressed in 12 O.S.1971, § 95, Second, is applicable to the plaintiffs' tort action which is governed by 12 O.S.1971, § 95, Third, and which period is two years. The plaintiffs having filed their action subsequent to the running of the two year period of limitations the trial court correctly sustained the defendants' demurrers. The decision of the Court of Appeals is vacated. The orders of the trial court are affirmed.

All of the Justices concur.