OLD ALBANY ESTATES, LTD., an Oklahoma Limited Partnership, Appellant,

v.

HIGHLAND CARPET MILLS, INC., a corporation, Appellee.

No. 50397.

Supreme Court of Oklahoma.

Oct. 16, 1979.

Rehearing Denied Jan. 14, 1980.

Luttrell, Pendarvis & Rawlinson, Norman, for appellant.

Baker, Baker & Wilson, Oklahoma City, for appellee.

DOOLIN, Justice:

Challenged here is a judgment for defendant in an action for damages for breach of implied warranties of merchantability and fitness for the particular purpose intended under the Uniform Commercial Code [1] in a sale of carpet.

Plaintiff purchased carpet for an apartment complex through an interior decorator, Lehman. Lehman in turn contracted with defendant for the purchase specifying details such as color and quality. Defendant did not mention or disclaim any warranties at the time of the order.

Sometime after the carpet was installed it became apparent the carpet was defective. Defendant refused to make any adjustment contending it had disclaimed all warranties on the invoices. This suit followed. The case was tried to the court who made general findings in favor of defendant. Plaintiff appeals.

Plaintiff's suit is based on allegations of breach of implied warranties provided for in §§ 2–314, 2–315 of the Uniform Commercial Code.[2] As a threshold issue, defendant

---

1. 12A O.S.1971 § 1–101 et seq. hereinafter cited by section number alone.

2. § 2–314. Implied Warranty: Merchantability; Usage of Trade.—

(1) Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) *Goods to be merchantable must be at least such as*

(a) pass without objection in the trade under the contract description; and

(b) in the case of fungible goods, are of fair average quality within the description; and

argues the correctness of trial court's judgment based on lack of privity between defendant as manufacturer and plaintiff as ultimate buyer. It is defendant's initial argument that under § 2–318, only certain parties other than the immediate buyer may benefit from an implied warranty by the manufacturer. Because plaintiff neither qualifies under this section nor is in privity with defendant he is not entitled to the protection of any implied warranty that might be given.

Defendant points to *Hardesty v. Andro Corporation-Webster Division*, 555 P.2d 1030 (Okl.1976) and its reliance on *Hester v. Purex*, 534 P.2d 1306 (Okl.1975) and *Moss v. Polyco, Inc.*, 522 P.2d 622 (Okl.1974). These decisions do stand for the proposition that § 2–318 limits warranty protection to persons named in that section, i. e. "any natural person who is in the family or household of his buyer or who is a guest in his home . . ." *Hester* dealt with an *employee* of purchaser, *Moss* with an invitee. Plaintiff here however, is a *purchaser* of the goods, not a third party beneficiary of the warranties.

■ Section 2–318 comes into play only after a final sale has been made and reflects the Legislature's intent to limit warranties applicable to parties with *no contractual* relationship to any person within the distributive chain of ownership through purchase. It has no application to plaintiff here who was the ultimate purchaser of the carpet and in the "vertical" chain of distribution.

  (c) are fit for the ordinary purposes for which such goods are used; and
  (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
  (e) are adequately contained, packaged, and labeled as the agreement may require; and
  (f) conform to the promises or affirmations of fact made on the container or label if any.
  (3) Unless excluded or modified (Section 2–316) other implied warranties may arise from course of dealing or usage of trade.
    § 2–315. Implied Warranty: Fitness for Particular Purpose.—Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill

*Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 287 (Alaska 1976) discussed this problem, distinguishing horizontal and vertical privity stating:

> "The issue of horizontal privity raises the question whether *persons other than buyer* of defective goods can recover from the buyer's immediate seller on a warranty theory. The question of vertical privity is whether parties in the distributive chain prior to the immediate seller, can be held liable to ultimate purchaser for loss caused by the defective product." (Emphasis supplied).

In the present case there was no direct contract and thus no vertical privity between manufacturer and plaintiff. The code however is silent and strictly neutral as to the necessity of vertical privity in applying implied warranties.[3] It is up to this court to decide to what extent vertical privity of contract will be required.

Recently in *Barker v. Allied Supermarket*, 596 P.2d 870 (Okl.1979), we held the warranty of merchantability as to *packaged food products* extended directly from bottler to buyer at a retail supermarket, not withstanding the lack of vertical privity, distinguishing *Hardesty v. Andro Corporation, supra*, because it did not concern food.

We believe the same policy reasons found in *Barker* also underly cases involving defective nonedibles. To require vertical privity results in perpetuating a needless chain of actions whereby each buyer must

or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

**3.** Official comment 3 to § 2–318 states:
> "The first alternative expressly includes as beneficiaries within its provisions the family, household, and guests of the purchaser. *Beyond this, the section in this form is neutral* and is not intended to enlarge or restrict the developing case law on *whether the seller's warranties*, given to his *buyer who resells*, *extend to other persons in the distributive chain* . . ." (Emphasis supplied)

Also see White and Summers, Uniform Commercial Code § 11–2, p. 327 (1972).

seek redress from his immediate seller until the actual manufacturer is eventually reached.[4]

Although *Hardesty* is correct in its analysis of § 2–318's horizontal application and cases relying thereon,[5] § 2–318 should have no application to vertical privity. This section relates to third party beneficiaries of warranties and is not intended to set any limits on necessity of vertical privity.[6] In this respect *Hardesty* is in error.

▮ We hold a manufacturer may be held liable for breach of implied warranty of merchantability or fitness for particular purpose under the Uniform Commercial Code without regard to privity of contract between the manufacturer and the ultimate buyer.[7] Plaintiff, being in the chain of distribution, may maintain a direct action against defendant to recover the benefit of his bargain in replacement of the carpet, unless the attempted disclaimer was effective.

Did the warranty disclaimer, found on the invoices, become a part of the contract of sale? While there was no mention of warranties at the time of contracting, the invoices sent to Lehman did contain conspicuous disclaimers as allowed by § 2–316. Although it was not until after the first payment was made that the invoice with its disclaimer arrived, defendant insists the disclaimers were "additional terms" that became a part of the contract because the carpet was accepted.[8]

Section 2–207 provides:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) *they materially alter it* ; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act." (Emphasis supplied).

There existed a contract for sale of carpet prior to delivery or receipt of the invoices.

---

**4.** *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968), where court allowed damage for diminution in value of cattle proximately resulting from feed manufacturer's (not immediate seller) breach of warranty under the code. Also see *Salvador v. Atlantic Steel Boiler Co.*, 256 Pa.Super. 330, 389 A.2d 1148 (1978) which held another reason for abolishing the requirement of vertical privity in actions for breach of warranty was the desirability of achieving legal symmetry in products liability area between tort and contract.

**5.** *Hester v. Purex*, 534 P.2d 1306 (Okl.1975); *Moss v. Polyco, Inc.*, 522 P.2d 622 (Okl.1974).

**6.** *Kassab v. Central Soya*, supra, n.4.

**7.** See *Jackson v. Cushing Coca-Cola Bottling Co.*, 445 P.2d 797 (Okl.1968). Also see pre-code cases based on common law implied warranty, abrogated by *Kirkland v. General Motors*, 521 P.2d 1353 (Okl.1974). *Cook v. Safeway Stores, Inc.*, 330 P.2d 375 (Okl.1958); *Ada Coca-Cola Bottling Co. v. Asbury*, 206 Okl. 269, 242 P.2d 417 (1952).

**8.** The disclaimer stated in capital letters:
"THE GOODS SOLD HEREIN ARE NOT WARRANTED TO BE MERCHANTABLE OR FOR ANY PARTICULAR PURPOSE WHATSOEVER. NOTICE OF CLAIM MUST BE RECEIVED WITHIN TEN (10) DAYS AFTER RECEIPT OF DELIVERY. PURCHASER AGREES THAT TEN (10) DAYS IS A REASONABLE TIME IN WHICH TO SUBMIT ANY CLAIM."

Under the above section if new terms to the contract are submitted by one party that materially alter the contract, there is still a contract but without the new terms, unless expressly agreed to by the other party. This is the interpretation given by the official comment 3 to § 2–207. It states:

"Whether or not additional or ·different terms will become part of the agreement depends upon the provisions of subsection (2). *If they are such as materially to alter the original bargain, they will not be included. unless expressly agreed to by the other party.* If, however, they are terms which would not so change the bargain they will be incorporated unless notice of objection to them has already been given or is given within a reasonable time." (Emphasis supplied).

This comment refers to the type of situation here involved. Under subsection (2) the terms become a part of the contract unless they materially alter it. If the submitted disclaimer materially altered the contract, the contract continues to be in force but *without* the disclaimer.

Comment 4 to § 2ʹ–207 specifically declares a clause negating implied warranties as an example of a typical material alteration.[9] Thus under this section the attempted disclaimer, certainly never agreed to by Lehman or plaintiff, is not a part of the contract. Implied warranties of §§ 2–314, 2–315 have not been eliminated. Plaintiff has available a cause of action for their breach. The fact plaintiff accepted the goods has no effect on this conclusion as a contract already existed; acceptance of the carpet was not necessary to create it. The additional term (disclaimer) did not become a part of the contract by the mere act of accepting the carpet.

We therefore hold the disclaimer is a new term materially altering the contract and thus not a part of the bargain.

Trial was to the court who made a general determination in favor of defendant. In such jury waived actions, a general finding is a finding of every specific thing necessary to sustain a judgment. Such judgment will not be disturbed on appeal in absence of legal errors, if there is any competent evidence tending to support trial court's judgment.[10]

Plaintiff showed there existed a contract for the sale of carpet from a merchant, incident to which were warranties of merchantability and fitness for purpose intended. Lehman relied on defendant's skill and judgment to furnish suitable carpet, defendant well knowing the carpet was to be used for an apartment complex. Plaintiff's evidence indicated carpet both lost fiber and suffered discoloration. This evidence was uncontroverted by defendant.

Evidence of every element of cause of action was proved. There was no competent evidence to support trial court's judgment in favor of defendant.

Accordingly plaintiff is entitled to recover for breach of the implied warranties of merchantability and fitness to use in the apartment complex. Case is reversed and remanded to trial court with directions to determine amount of damages, if any, that plaintiff sustained and to set attorney fees.

WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, C. J., and IRWIN, V. C. J., dissent.

---

9. This comment in pertinent part states:

"Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or fitness for a particular purpose in circumstances in which either warranty normally attaches; . . ."

10. *Givens v. Western Paving Co.*, 261 P.2d 450 (Okl. 1953).