**Jack Lester MARTIN, Appellee,**

**v.**

**GRIFFIN TELEVISION, INC., an Oklahoma Corporation, Appellant.**

**No. 47172.**

Supreme Court of Oklahoma.

Jan. 27, 1976.

Rehearing Denied April 27, 1976.

Patrick Brown, Oklahoma City, for appellee.

Roy J. Davis, James W. Shepherd, Andrews, Mosburg, Davis, Elam, Legg & Bixler, Oklahoma City, for appellant.

LAVENDER, Justice:

Jack Lester Martin (Martin) owned and operated a commercial pet shop. That shop offered pet grooming, sold pet supplies, and at times purchased and sold pets, including dogs. An individual bought a dog from Martin's pet shop. The dog was purchased as the only means to recover that particular dog believed by purchaser to be his family's pet which had been missing for about a month. The purchaser reported the incident to "Call for Action", including a report of the poor condition of the dog, of other pets found there, and of the shop in general. "Call for Action" was a voluntarily manned program with close association to the appellant television station. Telephone complaints coming to that voluntary program were cleared for possible broadcasting with the one calling in. If judged newsworthy by appellant's newsman, items reported to "Call for Action" were from time to time used as a portion of the early evening news program. Additional checking of the item was at the newsman's or his producer's discretion. This pet shop complaint became a basis for some four broadcasts by the television station as part of the news program on separate days.

Martin brought this action against Griffin Television, Inc. (television station), the owner and operator of the television station for its broadcasting the script prepared by its newsman containing statements alleged to be defamatory and injurious to Martin. At trial, the jury awarded Martin $55,000 actual damages and $30,000 punitive damages. Defendant television station appeals that judgment.

The broadcast content is not disputed. Affirmative defense of its truth is raised. Evidence is in conflict as to that issue.

Evidentiary conflict occurs as to identity of the dog, its physical condition, the conditions at the pet shop and the pets' conditions at the shop. Witnesses testified of lost confidence in the pet shop after hearing the broadcast. Evidence showed some business actually lost. Bookkeeper testified as to the effect on the business and of business losses. By jury verdict, all the fact issues were resolved in favor of Martin and against the television station.

The "Call for Action" voluntary program is not operated by the television station. The station does provide space and other services to the program. It does have some degree of control as to procedures. The appellant television station does not argue it has no responsibility for that program. The station uses the program for its own purpose as a news source. In the instant case, the newsman used one of the volunteers to do some checking for him.

The appellant television station argues failure of Oklahoma law of defamation to safeguard free speech as guaranteed in the First and Fourteenth Amendments to the United States Constitution and failure to prove damages.

What some call "New York Times standard" is promulgated by the United States Supreme Court decision of *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). There a city official in Alabama brought a libel action against the New York Times for publishing a paid advertisement describing the maltreatment of Negro students. The decision required actual malice and not presumed malice to be an essential element of libel as applied to a public official.[1] Actual malice was defined as

1. "We hold today that the Constitution delimits a State's power to award damages for libel in actions brought by public officials against critics of their official conduct. Since this is such an action, the rule requiring proof of actual malice is applicable. While Alabama law apparently requires proof of actual malice for an award of punitive damages, where general damages are concerned malice is 'presumed.' Such presumption is inconsistent with the federal rule. 'The power to create presumptions is not a means of escape from constitutional restrictions,' *Bailey v. Alabama*, 219 U.S. 219, 239, 200, 31 S.Ct. 145, 151, 55 L.Ed. 191, 'the showing of malice required for the forfeiture of the privilege is

"with knowledge that it was false or with reckless disregard of whether it was false or not." The rationale of this standard is not to bridle debate and discussion. Debate on public issues should be uninhibited, robust and wide open, and such debate may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials.

The "Times standard" was extended from public officials to public figures. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Its application was broadened to matters of public interest. *Rosenbloom v. Metromedia*, 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971).[2]

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) refused to require actual malice (Times standard) by reason of public concern (*Rosenbloom* decision) to a private individual which, according to the evidence, was not shown to be a public figure. The plaintiff Gertz was an attorney. He had briefly served on an appointive city housing committee. He did not assume an "influential role in ordering society." The opinion held him to be neither a public official nor a public figure. In representing a client, he was the attorney that brought a civil action against a policeman. This brought a published charge of Gertz's association with some unpopular organizations.

The latest expression of the Supreme Court of the United States in the field of free speech and free press is *Cox Broadcasting Corp. et al. v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975). There damages were sought for invasion of privacy caused by a televised report of the name of a deceased rape victim. The name had been secured from a public court record. The court reversed the damage recovery. It refused to allow the broadcast to be the basis of civil liability for invasion of privacy. Emphasis was placed on the need for reporting government action and of the proper conduct of public business, including the events of judicial proceedings. Crime, its prosecution, and judicial proceedings arising from the prosecutions were said to be events of legitimate concern to the public and fall within the responsibility of the press to report the operations of government. Interest in privacy was allowed to fade when the information involved already appeared on the public record. The majority opinion and a concurring opinion noted that court's holdings in this constitutional area involving protection of reputational interest in defamation actions. Both opinions acknowledged possible different interest in such cases partic-

---

not presumed but is a matter for proof by the plaintiff . . . .' *Lawrence v. Fox*, 357 Mich. 134, 146, 97 N.W.2d 719, 725 (1959)."

2. The *Rosenbloom* decision, in passing on a news account of a raid on an individual's home where allegedly obscene books were confiscated, in part said:

"If a matter is a subject of public or general interest, it cannot suddenly become less so merely because a private individual is involved, or because in some sense the individual did not 'voluntarily' choose to become involved. The public's primary interest is in the event; the public focus is on the conduct of the participant and the content, effect, and significance of the conduct, not the participant's prior anonymity or notoriety. The present case illustrates the point. The community has a vital interest in the proper enforcement of its criminal laws, particularly in an area such as obscenity where a number of highly important values are potentially in conflict: the public has an interest both in seeing that the criminal law is adequately enforced and in assuring that the law is not used unconstitutionally to suppress free expression. Whether the person involved is a famous large-scale magazine distributor or a 'private' businessman running a corner newsstand has no relevance in ascertaining whether the public has an interest in the issue. We honor the commitment to robust debate on public issues, which is embodied in the First Amendment, by extending constitutional protection to all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." (Footnote references deleted.)

ularly as to private libels, unrelated to public affairs. The concurring opinion cites *Gertz, supra.*

Basic to *Gertz* and to the present case is the determination as to whether the defamatory plaintiff is a private individual or a public official or figure. The *Gertz* opinion aids in that determination, saying:

" * * * That designation may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntary (sic) injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions.

* * * * * *

"We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."

In commenting on the "looking to the nature and extent of an individual's participation," the opinion continues:

* * * * * *

"He (Gertz) plainly did not thrust himself into the vortex of this public issue, nor did he engage the public's attention in an attempt to influence its outcome. We are persuaded that the trial court did not err in refusing to characterize petitioner as a public figure for the purpose of this litigation." (Explanation added.)

We believe the characterization of the defamed party, as to public or private personality, is an issue to be determined by the judge using the general guidelines suggested by *Gertz.*

■ Here, Martin, as was Gertz, must be characterized as a private individual. Martin was not a public figure for all purposes and in all contexts by achieving pervasive fame and notoriety. He had not become a public figure for a particular issue by voluntarily injecting himself into a particular public controversy; he had not thrust himself into the vortex of a public issue nor attempted to engage the public's attention to influence the outcome of a public issue. Martin was a private individual.[3]

---

3. Reading from the *Gertz* opinion:
   "More important than the likelihood that private individuals will lack effective opportunities for rebuttal, there is a compelling normative consideration underlying the distinction between public and private defamation plaintiffs. An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case. And society's interest in the officers of government is not strictly limited to the formal discharge of official duties. As the Court pointed out in *Garrison v. Louisiana,* 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964), the public's interest extends to 'anything that might touch on an official's fitness for office . . . . Few personal attributes are more germane to fitness for office than dishonesty, malfeasance, or improper motivation, even though these characteristics may also affect the official's private character.'
   "Those classed as public figures stand in a similar position. Hypothetically, it may be possible for someone to become a public figure through no purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare. For the most part those who attain this status have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have trust themselves to the forefront of particular

The *Gertz* decision seeks a balance of competing values between (1) the legitimate state interest through its libel laws of compensating individuals for the harm inflicted on them by defamatory falsehoods, and (2) the constitutionally guaranteed freedoms of speech and press with the need to avoid self-censorship by the news media. The opinion refused to constitutionally require the extension of the New York Times standard to media defamation of private persons if an issue of general or public interest was involved, as did *Rosenbloom, supra.* The balance is struck by allowing the states to define for themselves the appropriate standard of liability of the news media for defamatory falsehoods which injure a private individual; but the choice is not unlimited. *The standard must not impose liability without fault.*[4] The rationale in constitutionally allowing a lesser standard is through distinguishing between defamation plaintiffs—those public and those private. That difference is based on greater access to the channels of effective communication as between public and private persons, and the usually voluntary aspect of becoming a public official or figure. "Thus, private individuals are not only more vulnerable to injury than public officials and public figures; they are also more deserving of recovery."

Resulting from the constitutional limitation imposed by the *New York Times* case, *supra,* to public officials, by *Curtis Publishing Co.* case, *supra,* to public figures, and now extended to private individuals by *Gertz, supra,* we hold the legislative creation of presumed malice under the Oklahoma libel and slander statutes to be unconstitutional. We find the following sections or portions thereof unconstitutional:

12 O.S.1971, § 1443 as to that part which provides:

"In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same."

12 O.S.1971, § 1444 as to that part which provides:

" * * * and the plaintiff to recover shall *only* be held to prove that the matter was published or spoken by the defendant concerning the plaintiff." (Emphasis added.)

12 O.S.1971, § 1445 which provides:

"An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown."

With Martin determined to be a private individual, then *Gertz* necessitates the defining for Oklahoma the standard of liability for news media defamation injurious to a private individual. The television station would make the present case a defamation of a private individual but related to an event of public concern. It would make the pet shop, its physical condition, the care of pets for sale a matter of public concern. It argues the operation of a retail store is sufficient for that purpose. As a standard for Oklahoma, the television station would adopt the extension of the

---

public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment.

"Even if the foregoing generalities do not obtain in every instance, the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehoods concerning them. No such assumption is justified with respect to a private individual. He has not accepted public office nor assumed an 'influential rote in ordering society.' *Curtis Publishing Co. v. Butts,* supra, 388 U.S., at 164, 87 S.Ct., at 1996 (opinion of Warren, C. J.). He has relinquished no part of his own good name, and consequently he has a more compelling call on the courts for redress of injury inflicted by defamatory falsehood."

4. "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." *Gertz, supra.*

New York Times standard in cases of public or general interest, as did *Rosenbloom, supra,* although the defamed party was a private individual. The television station points to *Walker v. Colorado Springs Sun, Inc.,* Colo., 538 P.2d 450 (1975).

In *Walker, supra,* the libel action against the news media was brought by operators of an antique shop for publication of material concerning operators' purchase of allegedly stolen goods and efforts to have the goods returned to the claimed owner. It adopts *Rosenbloom* thereby extending the New York Times standard to a defamed private plaintiff where a matter of public or general interest is concerned. The opinion weighs the chilling effect upon news media as opposed to the possibility of lack of adequate compensation to a defamation-injured private individual. It concludes less harm to the public interest by siding with the news media. It states *"Gertz* does not follow and appears to disapprove of, the rule stated * * * in *Rosenbloom."*

There is an additional opinion in *Walker* written by Justice Erickson, which specially concurs in part and dissents in part. That opinion criticizes the adoption by Colorado of *Rosenbloom.* It calls *Rosenbloom* a plurality opinion with little vitality when announced and even less today.[5] It faults the majority opinion of *Walker* as

not striking a balance between the press and a private citizen, saying:

" * * * When these interests are in conflict, the courts must balance both interests and endeavor to reach an accommodation. The failing which is evident in the majority opinion is that the *Rosenbloom* test does not achieve a balance or an accommodation. The majority opinion fully implements the interest of the press, but does not take the private citizen's interest into account. * * *."

*Gertz* was principally concerned with limitations required by the constitution, but gave the states much latitude in their defining standards of liability for news media defamation injurious to a private individual. In its defenestration of the *Rosenbloom* test of "general or public interest" for constitutional purposes, the opinion notices the problem of requiring "judges to decide on an ad hoc basis which publications address issues of 'general or public interest' and which do not—to determine, in the words of *Mr. Justice Marshall,* 'what information is relevant to self-government.'" The opinion continues, "We doubt the wisdom of committing this task to the conscience of judges." *Gertz* examines instead the injured individual. If the individual is a public official or figure, the New York Times standard is constitutionally required for a recovery. If the in-

---

5. "The majority opinion in this case relies upon *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), as authority for saddling the citizens of Colorado with a prohibition against recovery for false, defamatory publications, when the proof falls short of the 'reckless disregard' standard announced in *New York Times Co. v. Sullivan,* supra, and *Curtis Publishing Co. v. Butts,* supra. *Rosenbloom* was a plurality opinion written by Mr. Justice Brennan, and concurred in by the Chief Justice and Mr. Justice Blackmun, which had little vitality when it was announced and even less today. Symposium—First Amendment and the Media, 26 Hastings L.J. No. 3 (1975) ; Brosnahan, From Times v. Sullivan to Gertz v. Welch : Ten Years of Balancing Libel Law and the First Amendment, 26

Hastings L.J. 777 (1975) ; The Supreme Court, 1973 Term, 88 Harv.L.Rev. 41, 139–148 (1974). See Kalven, The Reasonable Man and the First Amendment: Hill, Butts and Walker, 1967 Supreme Court Review 267 ; Note, 40 Ford.L.Rev. 651 (1972). Both *Rosenbloom* and *Gertz* focused on the issue of whether the knowing or reckless falsity standard applies to a defamation action brought by a private citizen when the defamatory statements relate to 'an event of public or general interest.' Mr. Justice Harlan dissented in *Rosenbloom* and applied a negligence standard. His dissent was adopted in the majority opinion in the *Gertz* case written by Mr. Justice Powell and reflects the standard which Colorado should follow, in my opinion."

jured individual is a private person, then a less demanding showing is constitutionally required for a recovery of actual damages. *Gertz* constitutionally allows a lesser standard for private person, *except for presumed or punitive damages*. What the lesser standard shall be is left to the states subject only to the requirement that the news media not be subjected to liability without fault.

The Oklahoma Bill of Rights as to liberty of speech and press, Const. Art. II, § 22 provides in part:

"Every person may freely speak, write, or publish his sentiments on all subjects, *being responsible for the abuse of that right*; * * *" (Emphasis added.)

Expressly in its constitution, Oklahoma has weighted the right with the responsibility for an abuse of that right. That same responsibility is not expressly found in the federal constitution.

We, too, must balance the news media rights with that of a private individual. We find the views of Justice Erickson, in his opinion in *Walker, supra,* and the expressions in *Gertz, supra,* as to the standard of liability to be more parallel with ours and the Oklahoma Constitution. We reject, as did *Gertz,* the *Rosenbloom* test as not achieving a balance or accommodation with these conflicting interests.

■ We conclude a reasonable balance between the right of the news media and the right of the private individual is best achieved by the negligence test. 76 O.S. 1971, § 5(a) provides, in part:

"Everyone is responsible, not only for the result of his wilful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, * * *."

Ordinary care is that degree of care which ordinarily prudent persons engaged in the same kind of business usually exercise under similar circumstances, and the failure to exercise such ordinary care would be negligence. *Atchison, T. & S. F. Ry. Co. v. Kennard,* 199 Okl. 1, 181 P.2d 234, 238 (1947). This court, in *Oklahoma Gas & Electric Co. v. Wilson,* 172 Okl. 540, 45 P. 2d 750 (1935), quoted at length from *Canadian Northern Ry. Co. v. Senske,* CCA 8th, 201 F. 637, 642, part of which reads:

"The validity of the general abstract rule that the measure of care * * * is that degree of care which an ordinary prudent man, engaged in the same kind of business, would have exercised under similar circumstances, is conceded. In cases like (cited cases omitted) in which there is no proof of the degree of care which other ordinarily prudent persons engaged in the same kind of business commonly use, juries may measure the care required of a defendant by the application of this rule to other facts and circumstances in evidence before them. But the best evidence of the degree of care which ordinarily prudent persons would have exercised under given circumstances is the degree of care which ordinarily prudent persons, engaged in the same kind of business, customarily have exercised and commonly do exercise under similar circumstances. And, when the evidence of this degree of care is substantial or undisputed, it furnishes the true and the best standard of ordinary care by which that actually used should be measured in all debatable cases."

Ordinary care under the circumstances is the same degree of care required of physicians and surgeons in Oklahoma. *McBride v. Roy,* 177 Okl. 233, 58 P.2d 886 (1936); *Cassingham v. Berry,* 67 Okl. 134, 150 P. 139, 168 P. 1020 (1917).

In the present case by Instruction 4 the jury was given two elements of actual damages: (1) reasonable value to any injury to Martin's good name and reputation and (2) reasonable value of any loss of business or reasonably likely to be lost.

■ The prohibition of recovery of damages because of uncertainty and too

speculative in nature applies to the fact of damage and not to the amount of damage. Syllabus by the Court in *Southwest Ice & Dairy Products Co. v. Faulkenberry*, 203 Okl. 279, 220 P.2d 257 (1950) said:

"The loss of profits proximately resulting from the wrongful injury to an established business constitutes an element of damages recoverable for such injury, and where it is made to appear that some loss has been suffered, it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits."

█ *Gertz, supra*, said actual injury is not limited to out-of-pocket loss. The more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. As a matter of law, we find both elements of damage could be included in actual injury and actual damage to the defamed party, subject, of course, to proof.

█ *Gertz* constitutionally requires the New York Times standard of actual malice where the defamed party is a private person for the recovery of presumed damages. 12 O.S.1971, § 1446 requires a minimum judgment of not less than one hundred dollars and costs. It makes no requirement of proof as to this minimum amount. This is a presumed damage not allowed by *Gertz* without evidence and a finding of actual malice. Section 1446 requires no such constitutional standard, but only a jury verdict or court finding in favor of the plaintiff. We hold that portion of § 1446 requiring a minimum judgment with not less than one hundred dollars with no proof as to loss or damage to be unconstitutional. That portion reads:

"If there be a verdict by a jury or finding by the court in favor of the plaintiff, the verdict and judgment shall in no case be less than one hundred dollars * * *."

*Gertz* constitutionally requires the New York Times standard of actual malice where the defamed party is a private person for the recovery of punitive damages. "Actual malice" is defined as "with knowledge that it was false or with reckless disregard of whether it was false or not." [6] That definition has been further refined in this state under *Washington v. World Publishing Company*, Okl., 506 P.2d 913 (1972). That opinion considered *New York Times Co. v. Sullivan, supra; Curtis Publishing Co. v. Butts, supra; St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *Washington Post Co. v. Keogh*, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966); and other authorities. There, we refused recovery on summary judgment where there was no factual showing of highly unreasonable conduct consisting of extreme departure from standard of investigation in reporting ordinarily adhered to by responsible publishers (broadcaster), and where there was no showing that reporter (newsman) or publisher (broadcaster) had any prior awareness of probable falsity of the article (broadcast) or that it was so inherently improbable that only a reckless person would have put it in circulation (on the air). Washington was determined to be a public figure. Under *Curtis Publishing Co., supra*, the test of actual malice for actual damage was the same as should have been applied in the case at bar before the jury could assess punitive damages.

The appellant television station raised the affirmative defense of the truth of the broadcast. 12 O.S.1971, §§ 304 and 1444 codifies that defense.[7] Appellant argues

---

6. Definition of actual malice under *New York Times Co. v. Sullivan, supra*.

7. 12 O.S.1971 § 304 provides:
"In the actions mentioned in the last section (§ 303), the defendant may allege the truth of the matter charged as defamatory, and may prove · the same, and any mitigating circumstances, to reduce the amount of damages, or he may prove either." (Explanation added.)

the trial court did not properly instruct the jury in that issue. Instruction 3 reads in part:

"The first issue for you to determine in this case is whether the statements about the plaintiff contained in plaintiff's exhibit nine (9) are true or false. The defendant has the burden of proof on this issue and if you find said statements are true then it will not be necessary for you to consider the remaining issues in this case and you must return a verdict for the defendant

"If on the other hand, you find that the statements are false you must then consider whether such false statements exposed the plaintiff, Jack Lester Martin, to public hatred, contempt or ridicule or tended to deprive him of public confidence or injured him in his business or occupation. The plaintiff has the burden of proof on this issue and if you find that they did not so expose, deprive or injure him you must return a verdict for the defendant."

 Reversible error is urged in instructing the jury on the issue as to whether the statements in the broadcast were true or false. The instruction immediately continued that the defendant had the burden of proof as to that issue. A better drafting of the instruction would not have included the words "or false." At most their inclusion is surplusage. If the statement was found not true, then it would have to be found false. The instruction did not end with that surplus language. It removed any possible confusion. If the statement was determined to be true, then no other issue was to be considered. The jury was to return a verdict for the defendant. If the statement was determined to be false, the jury was instructed as to what issue it then was to consider. Instructions must be considered in their entirety and not in isolated portions. *Karri-*

man *v. Orthopedic Clinic*, Okl., 516 P.2d 534 (1973); *Wooten v. Hall*, Okl., 442 P. 2d 334 (1968). No reversible error is contained in Instruction 3.

 Here, the jury was allowed to award plaintiff a judgment for both actual and punitive damages. The jury was given no standard of liability for the awarding of actual damages. The jury was allowed to grant punitive damages if the defendant was found guilty of malice, actual or presumed. A presumption of malice allows liability without fault. As a matter of law, we must reverse the judgment as to both actual and punitive damages, and remand for a new trial. Because of this holding, we do not pass upon the sufficiency of the evidence.

Reversed and remanded for a new trial.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, BARNES, SIMMS and DOOLIN, JJ., concur.

---

12 O.S.1971 § 1444 provides in part:
  "As a defense thereto * * * he (the defendant) may prove that the matter

charged as defamatory was true, * * *."
(Explanation added.)