Robert W. JOHNSTON, Appellant,

v.

CORINTHIAN TELEVISION CORPORATION, Appellee.

No. 49565.

Supreme Court of Oklahoma.

June 13, 1978.

---

Larry D. Leonard, Blackstock, Joyce, Pollard, Blackstock & Montgomery, Tulsa, for appellant.

Michael R. Ford, G. Douglas Fox, Sidney G. Dunagan, Gable, Gotwals, Rubin, Fox, Johnson & Baker, Tulsa, for appellee.

Harold B. Wahl, Wahl & Gabel, Jacksonville, Fla., L. K. Smith, Boone, Ellison & Smith, Tulsa, for National Newspaper Association, amicus curiae; William G. Mullen, James R. Cregan, Washington, D.C., of counsel.

Warner E. Lovell, Jr., A. David Fagin, Fagin, Hewett, Mathews & Fagin, Oklahoma City, for Oklahoma Education Association, amicus curiae.

**LAVENDER, Vice Chief Justice:**

Robert W. Johnston (Johnston), a coach-physical education teacher in the Skiatook public schools, brought a defamation action against Corinthian Television Corporation (station), a television broadcaster. The alleged defamatory statements were contained in television newscasts that included prepared scripts. The televised newscasts told of a sixth grader, on seeking to rejoin the grade school wrestling team, being required to submit to a whipping by his gym teacher and fellow students while naked and crawling, with his legs tied, through the legs of other team members.

The Court of Appeals opinion reversed the trial court's granting a summary judgment to the defendant station, found to be based on the trial court's finding of Johnston to be both a public official and public figure, and the station acted without actual malice. That decision determines Johnston to be neither a public official nor public figure, but a private person as in *Martin v. Griffin Television, Inc.,* Okl., 549 P.2d 85 (1976). The Court of Appeals remands so as to apply the *Martin* test of negligence. See also *Weaver v. Pryor Jeffersonian,* Okl., 569 F.2d 967, 973 (1977).

This court's review and understanding of federal constitutional problems as relating to libel and slander in the *Martin* and *Weaver* opinions make it unnecessary to detail a historical and present day analysis of United States Supreme Court decisions in that general field.

Here, there must first be a determination as to whether Johnston shall be considered a private or non-private person for the purpose of this defamation action. We find him to be a non-private person based on his being a public official.

"A person may become a public official within contemplation of the *New York Times* rule[1] in either of two ways. First, as that case itself illustrates, he may be an elected official, and the alleged libel must

1. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

relate to his official capacity. Second, as the Court held in *Rosenblatt v. Baer,*[2] he may be a government employee with such responsibility that the public has an independent interest in his position and performance, and the alleged libel must relate to his official capacity." (Footnote 1 added; footnote 2 renumbered.) *Libel,* 55 Texas L.Rev. 525, 531 (1977).

■ *Rosenblatt, supra,* found a supervisor of a county ski resort, who was employed by and directly responsible to county commissioners, to be a public official for federal constitutional protection purposes. The opinion refused to accept as a definition of a "public official" the understanding of the term for a local administrative purpose. Guidelines of the term "public official" are contained in the decision: (1) "*at the very least,* to those among the heirarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs (emphasis added)"; and (2) "(W)here a position in government has such apparent importance that the public has an independent interest in the qualifications and performance of the person who holds it, beyond the general public interest in the qualifications and performance[s] of all government employees."

We apply the second standard to Johnston. His position as wrestling coach was of apparent importance in that public school's athletic program for the public to have an independent interest in Johnston's performance as to the method of disciplining a sixth grade boy in conjunction with the grade school wrestling team. This interest went beyond the general interest as to the performance of "all government employees," as indicated by the number of withdrawals of students by parents from Johnston's physical education classes. Though the grade school coaching duties were voluntary, Johnston was operating within the framework of the public school system, an obvious governmental function. Okl.Const.Art. 13, § 1.

*Basarich v. Rodeghero,* 24 Ill.App.3d 889, 321 N.E.2d 739 (1974) was a libel suit brought by highschool teachers and coaches against a "newsletter" publisher. That opinion deals with the same issue before this court and reads, in part:

" * * *. Plaintiffs are public employees, hired by the school board and paid with public funds. As coaches and teachers in a local high school they maintain highly responsible positions in the community.

\* \* \* \* \* \*

"Public school systems, their athletic programs, and those who run them are consistent subjects of intense public interest and substantial publicity.

\* \* \* \* \* \*

" * * * Public school teachers and coaches, and the conduct of such teachers and coaches and their policies, are of as much concern to the community as are other 'public officials' and 'public figures.' "

In present case, the conduct of a coach-teacher and his policies were as much as a concern to the community as any other "public official."

Though called a strained application by the Court of Appeals decision, we can think of no higher community involvement touching more families and carrying more public interest than the public school system. This includes the athletic program. *Rosenblatt, supra,* rejected a local understanding of "public official," with its first standard setting forth a *minimal definition* of that term.

■ With Johnston determined to be a public official, the *New York Times* standard must be applied. *Martin, supra,*[3] discusses that standard requiring actual malice to be an essential element of libel as applied to a public official. Actual malice was defined as "with knowledge that it was false or with reckless disregard of whether

**2.** See footnote 47 of quote, 383 U.S. 75, 86 S.Ct. 669, 15 L.Ed.2d 597 (1966).

**3.** P. 87.

it was false or not." Here, under the pleading in the petition of malice and a reckless disregard for the truth and, when viewed with the inferences and conclusions to be drawn as to conflict between the affidavits of the station's personnel and of individuals seeking to alert the station by telephone to advise of their presence during the incident and of the inaccuracies in the broadcast of the use of belts and of Johnston participating in the whipping, we cannot find that there is no substantial controversy as to any material facts to sustain the summary judgment under Rule 13.[4]

We reverse the trial court and remand with directions to apply the "Times standard," for Johnston is a public official.

Opinion of the Court of Appeals vacated; judgment of trial court reversed and remanded with instructions.

All of the Justices concur.

---

4. Rules-District Courts, 12 Okl.St.Ann. Ch. 2–App., Rule 13. See also *Jones v. General Motors Acceptance Corp.*, Okl., 565 P.2d 9, 11 (1977) stating in part:

"The case is before the Court on the sustention of the separate motions of appellees for summary judgment. On appellate review, all inferences and conclusions to be drawn from the underlying facts contained in the record should be viewed in the light most favorable to the party opposing the motion. *Northrip v. Montgomery Ward & Co.*, Okl., 529 P.2d 489 (1974)."