**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CARL PARSON,

      Plaintiff - Appellee,

v.

DON FARLEY,

      Defendant - Appellant.

No. 18-5125
(D.C. No. 4:16-CV-00423-JED-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **EID**, **KELLY**, and **CARSON**, Circuit Judges.
_____

Don Farley, appearing pro se, appeals the district court's judgment on a jury

verdict in favor of Carl Parson on Parson's claims of defamation and false light

invasion of privacy. For his part, Parson claims this appeal is frivolous and seeks

permission to file a motion for an award of just damages under Federal Rule of

Appellate Procedure 38. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm

the district court's judgment and deny Parson's Rule 38 request.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. **Background**

In 1970, Farley's brother, Hubert Leon Farley (Leon), took Parson in and treated him like a son (Parson's biological father died in an accident when Parson was four). Leon died in 2010. At that time, Parson was a businessman in Inola, Oklahoma, a member of Inola's Chamber of Commerce, and the pastor of a small church. Leon's will instructed that Parson and Leon's three biological children inherit his farm (forty acres adjoining forty other acres Farley owned). But prior to Leon's death, Farley convinced him to sign a power of attorney authorizing Farley to convey the farm. Leon thereafter lost consciousness, and Farley, as power of attorney, conveyed the farm to Farley's family's business entity, CDF. Farley claimed the transfer was proper because the farm purportedly secured an outstanding debt Leon owed Farley.

Leon named Parson as executor of his estate. As executor, Parson sued Farley and CDF in Oklahoma state court to recover the farm. In 2018, a jury sided with Parson and returned a verdict proclaiming that Farley used undue influence on Leon, breached his fiduciary duty to Leon, acted with reckless disregard for the family members, and conspired with CDF to injure Leon's heirs. As a result, the Oklahoma state court set aside the conveyance of the farm to CDF and assessed damages against Farley.

Prior to the jury's verdict, in 2016, Parson ran for Oklahoma State Representative in District 8. Apparently displeased with the campaign's portrayal of

2

Parson as an honest family man, Farley sent a letter to the Inola Chamber of Commerce that read:

# BEWARE OF CARL PARSON
# KNOW THE TRUTH

LEON FARLEY WAS A MINISTER IN OKLAHOMA AND MEXICO FOR OVER FIFTY ( 50 ) YEARS.  LEON, TOOK CARL PARSON, A HIGH SCHOOL DROP OUT HOOKED ON DRUGS, IN AS ONE OF HIS OWN CHILDREN, MENTORED HIM INTO A STABLE LIFE, MARRIED WITH CHILDREN.

IN 2010 LEON FARLEY DIED, CARL PARSON TURNED AGAINST HIS FAMILY, CHEATED ON HIS WIFE, AND SUED HUBERT LEON FARLEY AND HIS BROTHER DON FARLEY.  CARL PARSON LIED UNDER OATH, WHILE KNOWING THE TRUTH.

# CARL PARSON IS A CHEATER & LIAR
## RUNNING FOR STATE REPRESENTATIVE DISTRICT 8

MY NAME IS DON FARLEY AND I APPROVE THIS MESSAGE.

Aplee. Supp. App., Vol. 2 at 410 (spacing and relative font size approximate).

The letter led Parson to file suit against Farley in Oklahoma state court asserting claims for libel, libel per se, and false light invasion of privacy.  Farley removed the case to federal court based on diversity jurisdiction.  *See* 28 U.S.C. § 1332.  The case proceeded to trial in the federal district court on two claims—defamation and false light invasion of privacy.  Farley appeared *pro se*.  At trial, Parson based his claims on Farley's assertions that he was hooked on drugs, cheated on his wife, and lied under oath. He claimed Farley published the letter to force dismissal of the probate case concerning Leon's farm.  In response, Farley claimed his letter was protected by the First

3

Amendment Free Speech Clause and the Fourteenth Amendment Due Process Clause, that the letter was true, and that he had not acted with actual malice.

At trial, Parson, who was sixty-five years old at the time, testified he left high school in the eleventh grade to support his family, but soon thereafter obtained a GED. He denied the remainder of Farley's disparaging statements. He testified Leon was like a father to him and that the day after Leon's funeral, Farley threatened to sue Parson and Leon's three biological children if they attempted to regain control of the farm. Parson described the jury verdict in the probate case. He also testified that the letter injured his reputation in the community and, for those who did not know him, "would influence whether [they] would want [him] to be [their] representative." Supp. R. at 108.

Parson additionally presented a series of witnesses who had known him for between twenty and fifty years, including two of Leon's three biological children. The witnesses testified that although Parson left high school to help his family, he did not use drugs, cheat on his wife, turn against his family, sue Leon, lie, or lie under oath. Some added that Farley's letter upset, hurt, or humiliated Parson. The President of the Inola Chamber of Commerce testified that the letter affected the outcome of the election, which Parson lost by a close vote. Leon's children confirmed Parson's testimony that Farley threatened to sue them if they contested his ownership of Leon's farm and about the jury verdict in the probate case.

Parson also called Farley to testify. Farley claimed that his initial attorney had filed false pleadings when the attorney wrote that Farley had circulated the letter in

4

Rogers County, where Inola is situated. He claimed he remembered no specifics about the jury verdict against him in the probate case. He testified he authored the letter but claimed he did not send it to the Inola Chamber of Commerce (he claimed he only sent it to the incumbent District 8 representative). He admitted that he never confirmed the disparaging allegations he cast against Parson in the letter other than obtaining court documents. He said he did not have to investigate because he knew first-hand the allegations were true. Parson also elicited testimony from Farley that he lived off social security but in 2016 signed a promissory note for $371,000 and a related business loan agreement and commercial guaranty, all on behalf of CDF.

Farley called only himself in his own case, and he only testified about why he signed the promissory note and commercial guaranty on behalf of CDF—which he said was wholly owned by his son. He explained that his son made him an officer of CDF so he could sign the loan documents, and the bank let him sign because they knew him.

The jury found in favor of Parson on both claims and awarded him $200,000 in compensatory damages. The jury specifically found by clear and convincing evidence that Farley had acted both in reckless disregard of Parson's rights and with malice toward Parson.

The case then proceeded to a second stage, where the jury considered whether to award punitive damages. At the outset of the second stage, Farley appeared to seek a mistrial as to the first stage proceedings. The district court denied his request. Farley then asked to be excused from the courtroom. The court stated its preference that Farley

5

remain, but Farley responded, "I don't want to participate," *id.* at 352, and left the courtroom before confronting the jury. He did not return. Parson then testified about Farley's conduct and assets, and the jury awarded Parson $500,000 in punitive damages. Farley appeals.

## II. **Discussion**

Farley raises several claims in this appeal concerning the jury instructions, sufficiency of the evidence, exclusion of evidence, final pretrial order, impeachment evidence, and punitive damages. We address Farley's arguments first,[1] then turn to Parson's request for permission to file a motion for attorney fees and double costs under Federal Rule of Appellate Procedure 38.

## A. **Jury Instructions**

Farley first presents a challenge to the jury instructions. Farley appears to contend he should prevail because what he wrote in the letter was true. And, he argues that because Parson was a public figure at the time, the First Amendment affords particularly strong protection to the statements in his letter under the rule first announced in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). Under *New York Times*, "[a] public figure may not recover damages for a defamatory falsehood without clear and convincing proof that the false 'statement was made with "actual malice"—that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*,

---

[1] We construe Farley's pro se filings liberally, but do not act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

6

491 U.S. 657, 659 (1989) (quoting *New York Times Co.*, 376 U.S. at 279-80); *see also id.* at 686 ("There is little doubt that public discussion of the qualifications of a candidate for elective office presents what is probably the strongest possible case for application of the *New York Times* rule . . . ." (internal quotation marks omitted)). Farley claims the district court did not afford him a fair opportunity to present that case law to the jury.

We reject this argument. First, Farley never objected to any of the jury instructions, as Federal Rule of Civil Procedure 51(d)(1)(A) requires for preservation of a claim of error. To the contrary, Farley approved all of the instructions. He has therefore waived appellate review of his arguments related to the instructions. *See United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012) ("Under the invited error doctrine, this Court will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial."); *United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1183 (10th Cir. 2009) ("[A] party that has *forfeited* a right by failing to make a proper objection may obtain relief for plain error; but a party that has *waived* a right is *not* entitled to appellate relief." (internal quotation marks omitted)).

Even if we overlooked Farley's waiver, his failure to object to the instructions would limit our review to plain error. *See* Fed. R. Civ. P. 51(d)(2) ("A court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights."). But Farley has not argued for plain-error review. And "the failure to argue for plain error and its application on

7

appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011).

But even if we also excused Farley's failure to ask for plain error review, we see no error, much less one that is "plain," "affects substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings," *First Am. Title Ins. v. Nw. Title Ins. Agency*, 906 F.3d 884, 895 (10th Cir. 2018) (internal quotation marks omitted). The district court's instruction on the elements of the defamation and false light-claims properly set forth the *New York Times* rule. *See* Aplee. Supp. App., Vol. 1 at 33 (instructing the jury that to recover for defamation, Parson had to show by the greater weight of the evidence that, among other things, the statements in the letter were "false," and that he had to prove "by clear and convincing evidence" that "Farley either knew the statement was false, had serious doubt as to whether the statement was true or false, or acted in reckless disregard as to whether the statement was false or not"); *id.* at 36 (substantially the same with regard to false light claim[2]); *id.* at 28 (defining "clear and convincing evidence" standard as a burden of proof that "is highly probable and free from serious doubt").

---

[2] In relevant part, a false light invasion of privacy claim under Oklahoma law requires proof that the published matter was "not true" and that the matter was published with "knowledge of or reckless disregard as to falsity," which "is identical to the actual malice standard from *New York Times Co.*" *Talley v. Time, Inc.*, 923 F.3d 878, 894-95 (10th Cir. 2019) (internal quotation marks omitted). The jury instruction tracked this standard.

8

As the finder of fact, the jury was free to determine—and did determine—that the evidence showed the disparaging statements central to Parson's claims were false. And the jury specifically found by clear and convincing evidence that Farley acted both in reckless disregard of Parson's rights, and with malice toward Parson.[3] The district court properly instructed the jury, so granting Farley's request to read case law regarding the *New York Times* rule to the jury would not have aided the jury in its deliberations.

Farley also contends the punitive-damages instruction did not comport with due process under the Fourteenth Amendment and similar Oklahoma constitutional provisions because it set forth a lower standard of proof than "required in other proceedings," Aplt. Opening Br. at 6, and the district court should have allowed him to read relevant case law to the jury. But he failed to object to the punitive-damages instruction, and he has not requested plain-error review on appeal. He has therefore waived his arguments, and we decline to conduct an alternative merits analysis on his punitive-damages argument because the argument is insufficiently developed for appellate review, *see Becker v. Kroll*, 494 F.3d 904, 913 n.6 (10th Cir. 2007) ("An issue or argument insufficiently raised in the opening brief is deemed waived.").[4]

Farley further points out that the district court did not allow him to finish his opening statement, and the court's promise that he would get additional time in his

---

[3] We address the sufficiency of the evidence in Section II.B., infra.
[4] We also note that Farley's action of walking out of the courtroom and declining to participate in the second stage of trial also weighs in favor of our decision to forego an alternative merits analysis with respect to this issue.

9

closing argument did not come to fruition because Parson's counsel objected fifteen times, which "caused a tremendous amount of confusion, to the point Farley had to terminate his closing statements," Aplt. Opening Br. at 7. He suggests this runs afoul of Federal Rule of Evidence 611(a), which provides: "The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." But Farley simply failed to finish his opening statement within the allotted time, and he fails to explain how Rule 611(a) applies to a closing argument. Even if Rule 611(a) does apply in closing, Farley fails to explain why the district court should have admonished Parson's counsel about making the objections; we count eighteen objections, fifteen of which the district court *sustained*, two it overruled, and one it appeared to sustain. This argument is without merit.

## B. **Sufficiency of the Evidence**

In his second issue, Farley maintains Parson failed to prove the disparaging allegations in Farley's letter—that Parson was hooked on drugs, cheated on his wife, and lied under oath—were false. He contends that Parson's witnesses only knew him as "a good guy," but did not "know him in 1970 or w[ere] to[o] young to recall, or [were] lying under oath." Aplt. Opening Br. at 8. However, Farley only provides conclusions that the disparaging allegations were true. He says the "entire Farley family knew" Parson was "hooked on drugs," Parson previously admitted to Farley that he cheated on his wife, and Parson "was caught in two lies while on the witness

10

stand" in the probate case. *Id.* Farley complains Parson did not call his wife to testify even though she was on the witness list. He adds that Parson presented no evidence of damages.

For this court to reverse a jury verdict, a party must show "the evidence points but one way and is not susceptible to any reasonable inferences supporting the verdict." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1247 (10th Cir. 2016) (internal quotation marks omitted). Farley's arguments do not come close to meeting this standard. Although he attempted to impeach witnesses who testified Parson was not hooked on drugs, had not cheated on his wife, and had not lied under oath, the jury was charged with weighing the evidence, determining the witnesses' credibility, and drawing factual conclusions. We may not reassess those determinations. *Rocky Mtn. Christian Church v. Bd. of Cty. Comm'rs*, 613 F.3d 1229, 1235-36 (10th Cir. 2010). And Farley presented no evidence in his case in chief touching on the truth or falsity of the disparaging allegations. Moreover, Parson presented testimony that Farley acted with actual malice by not independently investigating the allegations regarding Parson's alleged drug use, unfaithfulness, and perjury.

As for damages, Oklahoma law permits an award of compensatory damages arising from defamation based not only on financial loss, but also on "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Martin v. Griffin Television, Inc.*, 549 P.2d 85, 93 (Okla. 1976). Oklahoma law also permits damages for reputational harm arising from false light

11

invasion of privacy. *See* OUJI-CIV Instr. No. 28.16 (Nov. 2014 Supp.), Committee Comments ("One who is publicly placed in a false light . . . may recover damages for the harm to his reputation from the position in which he is placed."); *Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1064, 1066 (Okla. Civ. App. 2002) (applying *Martin*'s rule in a case involving defamation and false light claims). Parson presented evidence of harm to his reputation in the community, personal humiliation, and mental anguish. This evidence sufficiently supported the award of compensatory damages.

## C. **Exclusion of Evidence; Final Pretrial Order**

Farley's third issue, as best we understand it, is that the district court erred (1) in prohibiting him from introducing twenty-four exhibits and (2) with respect to the final pretrial order (PTO).[5] Our review is for abuse of discretion. *Prager v. Campbell Cty. Mem'l Hosp.*, 731 F.3d 1046, 1054 (10th Cir. 2013) (admission or

---

[5] Although unclear, Farley may also be contesting the admission of four of Parson's exhibits (the letter, a copy of the envelope in which the letter was mailed to the Inola Chamber of Commerce, a letter Farley wrote to Parson, and the promissory note Farley signed on behalf of CDF). But he simply states that Parson had not produced these exhibits during discovery. Even assuming that was the case, Farley does not address (1) his failure to object to the admission of either letter; (2) whether the admission of either letter was plain error, *see* Fed. R. Evid. 103(e) ("A court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved."); or (3) whether the admission of the other two exhibits over his objections was harmless, *see K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1156 (10th Cir. 1985) ("[E]rror in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties, and the burden of demonstrating that substantial rights were affected rests with the party asserting error."). We therefore conclude that any such argument Farley may be raising is insufficiently developed to garner appellate review. *See Richison*, 634 F.3d at 1131; *Becker*, 494 F.3d at 913 n.6.

12

exclusion of evidence); *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1222 (10th Cir. 2000) (pretrial order rulings). "A district court abuses its discretion when it renders an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Prager*, 731 F.3d at 1054 (internal quotation marks omitted).

Farley's admission "at the Pretrial Conference [that he never] provided any documents or exhibits to [Parson] in discovery or otherwise" dooms his contention that the district court erred in prohibiting him from introducing twenty-four exhibits. Aplee. Supp. App., Vol. 1 at 2. Parson objected to the admissibility of those exhibits, and the district court ruled that Farley had not shown "his failure to provide the exhibits before the Pretrial Conference was substantially justified or harmless," *id.* Accordingly, the district court prohibited Farley from using any of those exhibits based on Federal Rule of Civil Procedure 37(c)(1), which provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." We see no abuse of discretion in the court's ruling.

Farley argues that the district court erred in entering the final PTO despite his refusal to sign it. He claims he refused to sign because Parson's attorney changed what Farley had agreed to, which was that he would present the twenty-four exhibits. But in the draft PTO Parson submitted to the court, Parson objected to all of those exhibits. In a separate filing, Parson notified the court that he had discussed the proposed PTO with Farley, but Farley did "not want to do anymore and had nothing

13

to add to the proposed PTO and did not want to sign it." Aplee. Supp. App., Vol. 1 at 4. Instead, Farley was "standing by" his motion to "re-urge" a prior motion to dismiss the case and "in his words cancel [the] jury trial," and would await the court's ruling on that motion. *Id.* Parson also reported that Farley had agreed that Parson should submit the proposed PTO to the court and inform the court of his refusal to sign it "and that he did not want to file his own version of the Pretrial Order." *Id.* Given Farley's reported agreement to Parson's proposed course of conduct, which Farley has not challenged on appeal, and in light of our affirmance of the district court's ruling excluding the twenty-four exhibits, we conclude the district court did not abuse its discretion by filing the final PTO.

## D. **Impeachment Evidence**

Farley next contends the district court erred in overruling his objections to the admission of the $371,000 promissory note Parson used to impeach Farley's testimony that he lived off social security. Our review is for abuse of discretion. *Prager*, 731 F.3d at 1054.[6]

At trial, Farley objected to the admissibility of the note on the ground that Parson had no right to possess it because Farley had successfully protested Parson's subpoena for it (apparently in the probate case). The district court overruled that

---

[6] Farley does not expressly challenge the admission of the related personal guaranty and business loan agreement, which Parson also introduced as impeachment evidence.

14

objection. Farley now advances multiple theories why the district court should have sustained his objection.

Farley first claims that after the trial, the bank from which Parson obtained the note told him it "was different than what they had supplied, and it appeared to the bank that the document had been cut and pasted." Aplt. Opening Br. at 12. This claim has two fatal flaws. First, Farley provides no support for this post-trial, self-serving, conclusory assertion. What's more, although he now seems to claim the document was not authentic, Farley personally inspected the note at trial and testified that he had signed it. Thus, his argument must fail. And for these reasons, Farley's related theories—that the note was not admissible because it was not an original, as generally required under Federal Rule of Evidence 1002, and that the district court should have at the very least required Parson to authenticate the note—have no merit. Farley himself authenticated the note, and even if the note was a copy, Federal Rule of Evidence 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Thus, a copy of the note would be admissible under Federal Rule of Evidence 1003.

Farley finally argues that the note was inadmissible because Parson did not disclose the note before trial under Federal Rule of Civil Procedure "26(3)," Aplt. Opening Br. at 12, which we take to mean Rule 26(a)(3)(A). That rule requires pretrial disclosure of certain "information about the evidence that [a party] may present at trial *other than solely for impeachment*." Fed. R. Civ. P. 26(a)(3)(A)

15

(emphasis added).  Because Parson used the note "solely for impeachment," *id.*, he

had no obligation to disclose it to Farley in advance of trial.[7]

### E.  **Punitive Damages**

Farley contests the second-stage proceedings, arguing that "99% [of the

transcript pages] contain[] false and irrelevant information to this suit."  Aplt.

Opening Br. at 14.  He states that although "Parson accused Farley of playing a shell

game with CDF's assets by switching them to a newly formed company[,] . . . [t]he

truth is CDF ceased doing business in 2018."  *Id.*  But because Farley voluntarily left

the trial before Parson presented any evidence and never returned, he failed to

preserve any second-stage issues for appeal.  *See Daigle v. Shell Oil Co.*, 972 F.2d

1527, 1539 (10th Cir. 1992) ("As a general rule we refuse to consider arguments

raised for the first time on appeal unless sovereign immunity or jurisdiction is in

question.").

### F.  **Rule 38 Damages**

In his response brief, Parson requests permission to submit a motion for

attorney's fees and double costs pursuant to Federal Rule of Appellate Procedure 38.

Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it

may, after a separately filed motion or notice from the court and reasonable

opportunity to respond, award just damages and single or double costs to the

appellee."  "An appeal is frivolous when the result is obvious, or the appellant's

---

[7] The required pretrial disclosures under Rule 26(a)(1)(A)(ii) similarly except from disclosure documents to be used "solely for impeachment."

arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (internal quotation marks omitted). "[J]ust damages" includes attorney fees. *Id.*

Although a close call, we conclude this appeal is not frivolous. Therefore, we deny Parson's request for permission to file a motion seeking a Rule 38 award.

### III. **Conclusion**

The district court's judgment is affirmed. Farley's motion for appointment of counsel, which is set forth in his reply brief, is denied.

Entered for the Court


Joel M. Carson III
Circuit Judge