SOUTHWEST ICE & DAIRY PRODUCTS v. FAULKENBERRY et al.

No. 33601.   April 18, 1950.

Rehearing Denied May 16, 1950.

Second Petition for Rehearing Denied July 11, 1950.

*220 P. 2d 257.*

Butler & Rinehart, of Oklahoma City, for plaintiff in error.

Turner M. King and Carloss Wadlington, both of Ada, for defendants in error.

JOHNSON, J. This action was commenced in the county court of Pontotoc county by defendants in error, W. C. Faulkenberry and Maude Faulkenberry, d/b/a Faulkenberry Grocery Store, against plaintiff in error, the Southwest Ice and Dairy Products Company, a corporation, d/b under the trade name of Steffens Dairy Products Company, wherein plaintiffs sought to recover damages on account of the sale by defendant to plaintiffs of a quart of milk containing a dead mouse. The parties will be referred to as they appeared in the trial court.

Plaintiffs alleged, in substance, that on or about January 25, 1947, they owned and were operating a grocery store in Ada, Oklahoma; that theretofore they had purchased at wholesale quart bottles of milk from defendant to be sold by plaintiffs at retail in their store; that on January 26, 1947, while plaintiffs' store was open for business, and had on hand a quantity of the sweet milk so purchased, one of their regular customers bought a bottle of said milk; that after said customer had purchased said bottle of milk it was discovered in the presence of other customers of said store that it contained a dead mouse; that it became known to all the customers of said store and the surrounding neighborhood and the general public that a mouse had been discovered in a bottle of milk in plaintiffs' store, and that a quantity of milk purchased during the day was returned by a great number of plaintiffs' customers; that thereafter plaintiffs were able to sell hardly any milk to their customers, and immediately thereafter their business decreased and continued to do so and that said decrease in their business was due to the publicity resulting from the bottle of milk containing the dead mouse which had been sold to plaintiffs by defendant; that by reason thereof plaintiffs' business had been damaged in the sum of $1,000, for which they prayed judgment.

Defendant demurred to said petition, which demurrer was overruled. Defendant then answered admitting its corporate existence and authority to do business in Oklahoma and that it maintains and operates a creamery in the city of Ada, Oklahoma, and has occasion to sell at wholesale quart bottles of sweet **milk.**

Defendant specifically denied that on January 26th, or any other date, it sold to plaintiffs any quart bottles of milk containing a foreign substance.

It alleged that plaintiffs' business had not been damaged by any act or omission on its part.

The issues thus joined were tried to a jury resulting in a verdict and judgment for plaintiffs in the sum of $300, from which defendant appeals.

Defendant contends that the trial court erred in overruling its demurrer to plaintiffs' petition. The facts stated in the petition were admitted by the demurrer. Plaintiffs under the pleadings have been injured by a breach of duty owed to them. A manufacturer or processor of food products under modern conditions impliedly warrants his goods when dispensed in original packages or bottles, and such warranty is available to all who may be damaged by their use in the legitimate channels of trade, including those who purchase them for resale. 36 C.J.S., Food, §60; 22 Am. Jur., Food, §110; Mazetti et al. v. Armour and Co. et al., 75 Wash. 622, 135 P. 633; Neiman v. Channellene Oil & Manufacturing Co., 112 Minn. 11, 127 N.W. 394, 140 Am. St. Rep. 458. As to implied warranty, see Griffin et al. v. Asbury, 196 Okla. 484, 165 P. 2d 822.

In this connection defendant asserts that plaintiffs did not allege or prove negligence, and that there was no evidence of any particular or specific act of negligence by defendant. It is undisputed that there was a dead mouse in the bottle of milk, and that the seal of the bottle containing same had not been disturbed after it was processed; that the manufacturer or processor had exclusive control of the agency or processing plant. The contention of defendant as a general proposition is correct, but where the specific act of negligence causing the injury cannot be ascertained or shown by the plaintiff, and where the agencies out of which the negligence arises were within the exclusive control of the defendant, the plaintiff is neither required to allege nor prove any specific act of negligence. In such case, "where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care." 45 C.J. 1193, Negligence, §768; 36 C.J.S., Food, §69a (2); Eisenbeiss v. Payne, 42 Ariz. 262, 25 P. 2d 162; Annotations 105 A.L. R. 1044. This rule is based upon the doctrine of res ipsa loquitur, 45 C.J., Negligence, §768, supra; 22 Am. Jur., Food, §117. Even though the plaintiffs failed to allege negligence under the facts alleged the petition stated a cause of action. 22 Am. Jur., Food (Pleading) §113.

The milk was bottled and sealed by defendant so that its contents reached the retailer without being altered or tampered with, as the evidence of the superintendent of defendant's processing or bottling plant showed. A mouse was found in said bottle of milk so that its physical location therein conclusively demonstrated its presence there when the article came from the packer or bottler. The thing speaks for itself not only as to negligence of packer or bottler, but as to his prima facie responsibility for the resulting injury. Neiman case, supra; Mazetti case, supra.

However, plaintiffs' argument is principally based on the pure food law. It is contended that the negligence is presumed if a violation of the pure food law be shown. Defendant admits that this is true as a general rule, but it says that the rule applies only where the statute was intended for the benefit of the party who brings the suit; that the pure food laws are intended for the benefit of the consumer alone.

We do not think this rule is applicable in this case, or that plaintiffs are barred by defendant's argument. The

282

consumer purchases prepared foods to sustain life and health. The retailer purchases the same products, depending upon established brands to sustain his reputation as a dealer in clean and wholesome food. We hold that where sealed packages or bottles are put out and it is made to appear that the fault, if any, is that of the manufacturer or packer, the product was intended for the use of all those who handle it in trade as well as those who consume, and in the absence of an express warranty of quality, a manufacturer of food products under modern conditions impliedly warrants his goods when dispensed in original packages or bottles, and that such warranty is available to all who may be damaged by reason of their use in the legitimate channels of trade. Mazetti case, supra, and cases cited therein.

In its second proposition defendant contends that the court erred in instructing the jury as to the measure of damages in instructions Nos. 2 and 3. Neither of these instructions was excepted to by defendant and any error in them, aside from fundamentals, was waived by defendants by failure to except thereto. These instructions disclosed no fundamental error. Defendant did except to instruction No. 1 given by the court, which is as follows:

"You are instructed . . . that if you find from a preponderance from (sic) the evidence that the business of the said W. C. Faulkenberry and Maude Faulkenberry was injured by reason of said sale, the plaintiffs will be entitled to recover such damages as in your opinion, as based by a preponderance of the evidence was approximately caused by said sale."

The only objection presented by defendant to said instruction is that part wherein the court in said instruction (and in others not excepted to) used the word "approximate," instead of the word "proximate," and it may be said to this extent that there was error, but it does not necessarily follow that it was such error as to warrant a reversal. Defendant cites no case where

judgment was reversed on account of this particular error.

In Carter v. J. W. Silver Trucking Co. et al. (Cal. App.) 36 P. 2d 837, it is held:

"That instruction used expression 'approximate cause' of accident held not prejudicial, since expression is practically synonymous with 'proximate cause' of accident."

In State Compensation Ins. Fund v. Jorn, 186 Cal. 782, 200 P. 624, it is said:

"In common parlance the two words, 'proximate' and 'approximate,' are used interchangeably, and the dictionaries give them as synonyms. It is true, however, that the word 'proximate' has a distinct and separate legal significance; but, in view of the explicit instructions making the negligence to depend upon the 'proximate' cause, the jury could not well have been misled by the substitution of the word 'approximate' in the submission of the special issue. The courts have frequently held such an interchange of these terms in instructions without prejudice."

See, also, Strait v. Bartholomew, 195 Iowa, 377, 191 N.W. 811.

It is urged that there was error in refusing defendant's requested instruction No. 2. It appears that the substance of the requested instruction was covered by other instructions given by the court. This claim is without merit.

Defendant further asserts that the evidence as to plaintiffs' damage, if any, is indefinite and uncertain, and any verdict based thereon must be speculative.

Although the evidence as to the amount of damages is in some respects rather vague, yet the evidence was sufficient, in our opinion, to be presented to the jury for their determination of the cause of action.

Plaintiffs produced in evidence reports of their sales for the five months next preceding January, 1947, and for the five months following January, 1947, made to the Oklahoma Tax Commis-

sion. These reports showed total sales, not including cigarettes and tobacco, for the five months preceding January, 1947, of about $3,320, or average monthly sales of about $664. For the five months after January, 1947, the report showed total sales, not including cigarettes and tobacco, of about $1,331, or monthly sales of an average of about $266. These figures would indicate the amount of their business which was consequently lost.

There is some evidence to the effect that the sales in plaintiffs' store had begun to fall off to some extent several months before the incident here involved. But the evidence tends to show an average monthly decrease of about $80.60 in gross profits for the five months immediately following January, 1947. If the overhead expense remained the same, and apparently it did, the evidence tended to show a total decrease in profits for the five months after January, 1947, of about $400.

It is the rule that loss of profits proximately resulting from the wrongful destruction of an established business constitutes an element of damages recoverable for such destruction, and it has been held that where it was apparent that some loss was suffered, it was proper to let the jury determine what the loss probably was from the best evidence the nature of the case admitted. Johnson Oil Refining Co. et al. v. Elledge, 175 Okla. 496, 53 P. 2d 543; Neiman case, supra.

Under the rule in the Johnson Oil Refining Co. case, supra, there is evidence to support the verdict and judgment.

Affirmed.

DAVISON, C. J., and WELCH, HALLEY, and O'NEAL, JJ., concur. ARNOLD, V. C. J., and CORN, GIBSON, and LUTTRELL, JJ., dissent.