**Gladys JACKSON, Plaintiff-in-Error,**

**v.**

**CUSHING COCA–COLA BOTTLING COMPANY, a corporation, Defendant-in-Error.**

**No. 41667.**

Supreme Court of Oklahoma.

Sept. 17, 1968.

Rehearing Denied Oct. 8, 1968.

James B. Browne, Cushing, for plaintiff in error.

Hoel & Horton, Stillwater, for defendant in error.

DAVISON, Justice.

This case involves a situation, where plaintiff, Gladys Jackson (plaintiff in error here) sued the defendant in error, Cushing Coca-Cola Bottling Company, a corporation, as defendant, in an action for damages for personal injuries. At the conclusion of plaintiff's evidence the trial court sustained a demurrer to the evidence. After plaintiff's motion for a new trial was denied, plaintiff appeals. The parties will be referred to as they appeared in the trial court.

Plaintiff's petition alleged that she operated a cafe in Cushing, Oklahoma; that she purchased Coca-Cola from the defendant for her own consumption and for resale to the public; that on September 14, 1963, plaintiff drank a portion of a bottle of such Coca-Cola which was contaminated by foreign substances and that within about 20 minutes thereafter she became violently ill and was confined to her bed for a short period of time. Plaintiff sued for damages for medical expense, loss of income and pain and suffering.

The defendant's answer consisted of a general denial.

Plaintiff testified that she purchased the Coca-Cola in question from the defendant and that she drank a portion of the bottle; that as she was drinking from the bottle she felt something in her mouth and spit it out; that she noticed foreign substances in the bottle and soon thereafter became nauseated, ill, vomited, suffered diarrhea, and sought the services of a physician. The testimony of plaintiff that the bottle in question contained foreign substance was corroborated.

Two doctors were called by plaintiff as medical experts who both testified by deposition.

Dr. L was both a physician and pathologist of eminent qualifications. Dr. L testified that from his examination of the foreign particles in the unconsumed portion of the bottle revealed the same to be cellulose; that he didn't find any bacteria of botulism in the remains of the bottle and found no poisonous elements in the bottle; that there was not a sufficient quantity of cellulose itself to be irritating or cause diarrhea unless there was an irritating substance in the particular cellulose; that no substance was found which would be associated with any known cause for food poisoning.

On re-direct examination Dr. L testified as follows:

"Q   Doctor, I believe that you testified that when you received the bottle that it was approximately one-third (⅓) full?

A   Yes.

Q   And there were small particles floating on the surface?

A   Yes.

Q   Could your examination of this bottle, as you received it, indicate the total number of particles that were in the bottle at the time that it was full?

A   No, of necesssity, of course not. We can only examine what we see.

Q   Would it be possible, if a number of particles were present that had been consumed, that they could have been of sufficient magnitude to act as an irritant and caused gastroenteritis?

A   Particles of what kind?

Q   Of the same type that was found.

A   I would say this is possible if such particles were not a part of the fluid which we received. In other words, if they were separate and would not have inter-mingled with the fluid. In other words, if there had been a severe poison contained in it, I would expect it to still be demonstrable in the fluid, but if there were some loose particles—if some loose particles were present which were not mixed with the fluid, then they could have been prezent."

Dr. L did not personally physically examine plaintiff.

Dr. D, a qualified physician and surgeon, testified on behalf of plaintiff that plaintiff first consulted him on September 16, 1963, and gave him a history of her illness; the history given was "that on September 14 at

approximately 3 o'clock in the afternoon, she drank about half a bottle of Kingsize Coca Cola and that within twenty or thirty minutes, she became violently ill and started vomiting and began to have cramps in her abdomen and developed a diarrhea;" that he personally examined the remainder of the fluid in the bottle and found quite a a few foreign particles floating in the bottle and a lot of foreign material apparently attached to the side of the bottle which looked like debris to him; that his physical examination of plaintiff, together with the history, was that of acute gastroenteritis; that anything that would irritate the mucous membrane of the stomach would cause acute gastroenteritis; that in the physical examination of plaintiff he discovered some rumblings of the abdomen and some sounds in the intestinal tract; that in his opinion plaintiff's illness was caused as a result of the consumption of the Coca-Cola.

Dr. D further testified as follows:

"My opinion at the time of my original examination of this patient, as I previously stated, was gastro-enteritis and it was my opinion that the foreign material that I saw in this bottle, caused the gastroenteritis but following receiving Lobeer's (Dr. L) report, even though as he states, that these were not poisonous substances as such, it is my opinion that they were sufficiently irritating to the mucosa of the intestinal tract to cause gastroenteritis."

■ We have two doctors testifying for the plaintiff with somewhat conflicting testimony. Both doctors were qualified, one as a physician and surgeon, and the other as a physician and pathologist. Dr. D had sent plaintiff to Dr. L for a toxicological report and defendant argues that Dr. D's testimony should be considered as inferior to that of Dr. L's. This could be very true had the case been decided by a jury. However, it remains that prior to the referral to Dr. L, Dr. D, from a personal physical examination of plaintiff, diagnosed plaintiff's condition as that of gastroenteritis and under the related facts the case should have been submitted to the jury.

The defendant's brief cites only one case, that being the case of Cushing Coca-Cola Bottling Company v. Francis, 206 Okl. 553, 245 P.2d 84. This case holds as follows:

"Where the injuries are of such a character as to require skilled and professional men to determine the cause and extent thereof, the question is one of science, and must necessarily be determined by the testimony of skilled professional persons, and cannot be determined from the testimony of unskilled witnesses having no scientific knowledge of such injuries."

The cited case is readily distinguishable from the case at bar for the reason that in the cited case no medical testimony was offered, while here, medical testimony was introduced upon which a jury was entitled to consider the value thereof.

■ This court has held in a long line of decisions that in actions of legal cognizance a demurrer to plaintiff's evidence should be overruled unless there is an entire absence of proof tending to show a right to recover; and in passing upon a demurrer to the evidence, the trial court must consider true all of the evidence favorable to the party against whom demurrer is directed together with all inferences that may be reasonably drawn therefrom and disregard all conflicting evidence favorable to the demurrant. Putt v. Edwards Equipment Co., Okl., 413 P.2d 559; Sisler v. Whitten, Okl., 393 P.2d 497; Sneed v. Beaverson, Okl., 395 P.2d 414.

■ The law in Oklahoma is well settled that a manufacturer or processor of food products under modern conditions impliedly warrants his goods when dispensed in original packages or bottles, and such warranty is available to all who may be damaged by their use in the legitimate channels of trade, including those who purchase them for resale. Southwest Ice & Dairy Products v.

Falkenberry, 203 Okl. 279, 220 P.2d 257, 17 A.L.R.2d 1373.

The cause is reversed and remanded for a new trial.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, BERRY, LAVENDER and McINERNEY, JJ., concur.