Brack F. BARKER, Appellant,

v.

ALLIED SUPERMARKET, d/b/a Arlan's Food Store, and Dr. Pepper Bottling Company of Oklahoma City, an Oklahoma Corporation, Appellees.

No. 48633.

Supreme Court of Oklahoma.

May 29, 1979.

As Corrected June 18, 1979.

Ed Abel, Lampkin, Wolfe, Burger, Abel, McCaffrey & Norman, Oklahoma City, for appellant.

Kenneth N. McKinney, McKinney, Stringer & Webster, Oklahoma City, for appellee, Allied Supermarket.

John R. Couch and Robert C. Margo, Oklahoma City, of counsel; Pierce, Couch, Hendrickson & Short, Oklahoma City, for appellee, Dr. Pepper Bottling Co. of Oklahoma City, Oklahoma.

` WILLIAMS, Justice.

Plaintiff alleges that he suffered personal injuries while he was shopping in the store of defendant, Allied Super Market, doing business as Arlan's Food Store in Midwest City, Oklahoma. He states that he picked up a carton of Dr. Pepper drinking soda from the self-service shelf and that while attempting to place it in a cart provided by Arlan's one of the bottles exploded and that a fractured piece of the glass bottle struck him in the right eye which resulted in ninety percent (90%) permanent loss of vision.

Plaintiff filed an action for damages for negligence and breach of implied warranty of merchantability against defendant Allied Super Market and defendant Dr. Pepper Bottling Co. of Oklahoma City on November 3, 1972, being 2 years and 1 day after he allegedly was so injured. The trial court sustained defendants' demurrers which averred that plaintiff's petition sounded in tort and that his alleged cause of action was barred by the supposedly applicable two year statute of limitation. 12 O.S.1961, § 95, Third).

Plaintiff appealed. He argues that his second cause of action as to the alleged breach of implied warranty of merchantability arose pursuant to Oklahoma's Uniform Commercial Code and that the applicable period of limitations is five (5) years (12A O.S.1961, § 2–725(1)) [1].

The issue here is whether a buyer of goods who is invited by a merchant to take possession thereof from a self-service display and to defer payment to sometime subsequent to the taking of possession, has the protection of an implied warranty of merchantability. We hold he does.

Section 2–314(1) provides:

Unless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied *in a contract for their sale* if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale. (Emphasis added).

█ Plaintiff contends that taking possession of goods from a self-service display coupled with the intent to pay for them is sufficient to create a Section 2–314 "contract for their sale" which gives rise to the implied warranty of merchantability. We agree and are in accord with the decisions of *Giant Food, Inc. v. Washington Coca-Cola Bottling Company, Inc.*, 273 Md. 592, 332 A.2d 1, 78 A.L.R.3d 682 (1975), *aff'd in part and reversed in part Sheeskin v. Giant Food, Inc.*, 20 Md.App. 611, 318 A.2d 874 (1974); *Gillispie v. Great Atlantic & Pacific Tea Co.*, 14 N.C.App. 1, 187 S.E.2d 441 (1972); *Fender v. Colonial Stores, Inc.*, 138 Ga.App. 31, 225 S.E.2d 691 (1976).

The key to this case hinges upon the determination that a contract for sale exists as defined under the Uniform Commercial Code. Several relevant definitions are found in Section 2–106 including the following:

(1) In this Article unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. *"Contract for sale"* includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (Section 2–401). A "present sale" means a sale which is accomplished by the making of the contract. (Emphasis added.)

A merchant who utilizes the self service shopping method thereby makes an open

---

1. Note: Hereinafter section numbers refer to sections of the UCC unless indicated otherwise.

invitation to the public to enter his store and to inspect and take possession of any item so displayed. The merchant's act of stocking these self-service displays with goods thereby makes an offer to the shopper to enter an contract for their sale.

Section 2–206 reflects the Code's more flexible approach to contracting with respect to sales, and it provides that:

(1) *Unless otherwise unambiguously indicated* by the language or circumstances

(a) an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances;

     *        *        *        *        *        *

(2) Where the beginning of a requested performance is a reasonable mode of acceptance an offeror who is not notified of acceptance within a reasonable time may treat the offer as having lapsed before the acceptance. (Emphasis added).

UCC Comment 1 suggests that:

Any reasonable manner of acceptance is intended to be regarded as available unless the offeror has made quite clear that it will not be acceptable. * * *

The Court of Special Appeals of Maryland has held, under a similar factual situation, that as to such an offer

* * * the manner by which acceptance was to be accomplished in the transaction * * * was not indicated by either language or circumstances. The seller did not make it clear that acceptance could not be accomplished by a promise rather than an act. Thus it is equally reasonable under the terms of this specific offer that acceptance could be accomplished in any of three ways: 1) by the act of delivering the goods to the check-out counter and paying for them; 2) by the promise to pay for the goods as evidenced by their physical delivery to

the check-out counter; and 3) by the promise to deliver the goods to the check-out counter and to pay for them there as evidenced by taking physical possession of the goods by their removal from the shelf. (*Sheeskin v. Giant Food, Inc.*, 20 Md.App. 611, 318 A.2d 874, 882 (1974)).

The Court of Appeals of Georgia has also held these alternatives to be reasonable methods of acceptance and have applied them in a similar case. (*Fender v. Colonial Stores, Inc.*, 225 S.E.2d 694). We agree, and adopt these alternative methods for the shopper's acceptance.

Further we recognize that the UCC provides a more flexible approach to contracting than more traditional approaches. Section 2–204 provides:

(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

Allegedly it is common custom in grocery stores, defendant's included, for shoppers to change their minds and to return unwanted merchandise prior to paying for it. This custom of the trade does not in itself necessitate the conclusion that no contract for sale has arisen between the shopper and the merchant. Rather under the Commercial Code the contract for sale of the goods is merely "terminated" [2] pursuant to the parties' shopping agreement [3] made upon the

---

**2.** UCC 2–106(3) provides: " ‘*Termination*’ occurs when either party *pursuant to a power created by agreement or law puts an end to the contract otherwise than for breach.* On ‘termination’ all obligations which are still executory on both sides are discharged but *any right based on prior breach or performance survives.*" (Emphasis added).

**3.** UCC 1–201(3) provides: " ‘*Agreement*’ means the bargain of the parties in fact as found in their language or *by implication from other circumstances including course of dealing or usage of trade or course of performance* * *.*" (Emphasis added).

shopper entering the store. Here the defendant-retailer allegedly permitted its shoppers to return goods and made no attempt to expressly modify this custom of the trade, and thereby such conduct became part of the shopping agreement.

In addition to the power of termination, a buyer or seller may have the power to "cancel" a contract for sale. " 'Cancellation' occurs when either party puts an end to the contract *for breach* by the other and its effect is the same as that of 'termination' except that the cancelling party also retains any remedy for breach of the whole contract or any unperformed balance." (Section 2–106(4)).

According to the allegations the bottle exploded after plaintiff-buyer picked up the beverage carton but before he made payment. Therefore, it would appear appropriate for the plaintiff-buyer to "cancel" the contract for sale, assuming that the evidence establishes a contract for sale and fails to establish that plaintiff in fact breached the contract himself.

The alleged contract for sale would include an implied warranty of merchantability arising by operation of Section 2–314(1). If the goods are found to not have been merchantable then the alleged contract for sale would have been breached on the seller's side which would have, in addition to giving the buyer cause for cancelling the contract for sale, giving rise to " * * * consequential damages resulting from the seller's breach includ[ing] * * * (b) *injury to the person or property* proximately resulting from any breach of warranty." (UCC § 2–715; Emphasis added).

This conclusion is in accord with *Giant Foods, Inc. v. Washington Coca-Cola Bottling Company, Inc.*, 273 Md. 592, 332 A.2d 1 at page 9 (Md.1975) where that court states:

The retailer complains that this result "introduces unnecessary complexity into the law governing 'self-service' establish-ments." We do not agree. What this argument overlooks is that the customer who is welcomed into the retailer's store is faced with no choice. If he chooses to shop in that store, he must do so under the terms imposed by the retailer. He must select goods, place them in a cart provided by the retailer, and then tender payment at the checkout counters located near the exit. Thus, the only reasonable manner in which a customer of a self-service establishment can accept the store's offer is by taking the goods into his possession. The argument advanced by the retailer, pursued to its logical conclusion, would have the effect of restricting a "contract for sale" to "present sale" situations. This result would collide with § 2–106(1), . . . which includes both a present sale of goods and a contract to sell goods at a future time within the definition of a "contract for sale."

The Uniform Commercial Code has de-emphasized the importance of title to goods. In particular, Section 2–401 provides that

[E]ach provision of this Article with regard to the *rights, obligations* and *remedies* of the seller, the buyer, purchasers or other third parties *applies irrespective of title* to the goods except where the provision refers to such title. (Emphasis added).

UCC Comment 1 to this section suggests that "[t]his Article [II] deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not 'title' to the goods has passed. * * * " In the present case the exception noted in section 2–401, *supra*, is not triggered, and therefore title to the subject Dr. Pepper is irrelevant because the issue concerns the rights, obligations and remedies of the parties.

For goods to be merchantable, Section 2–314(2) provides six minimum conditions [4]

4. UCC 2–314(2) provides:

"Goods to be merchantable must be at least such as

  (a) pass without objection in the trade under the contract description; and

  (b) in the case of fungible goods, are of fair average quality within the description; and

  (c) are fit for the ordinary purposes for which such goods are used; and

that such goods must satisfy. Uniform Commercial Code Comment 6 to that section states that:

> Subsection (2) does not purport to exhaust the meaning of "merchantable" nor to negate any of its attributes not specifically mentioned in the text of the statute, but arising by usage of trade or through case law. The language used is *"must be at least such as * * *,"* and the *intention is to leave* open other possible attributes of merchantability.[5] (Emphasis added).

It would appear as to the sale of beverages in glass bottles that subsections

> (c) "goods . . . are fit for the ordinary purposes for which such goods are used,"

and

> (e) "goods . . . are adequately contained"

would require that the bottles be of sufficient strength to withstand the ordinary pressures of the contents.

In *Soter v. Griesedieck Western Brewery Co.*, 200 Okl. 302, 193 P.2d 575, 580 (1948) this Court held that an implied warranty did not arise as to bottles used to contain beer. Since that case was decided, the Uniform Commercial Code has been adopted in this state. Section 2–314(2) provides minimum conditions for goods to be merchantable, including subsection 2(e) that the goods be "adequately contained, packaged, and labeled as the agreement may require." This subsection effectively overrules in part *Soter, supra.* Therefore, under 2-314(e), or possibly subsection (c), the bottle should not be excluded from the implied warranty. Rather the beverage and the container, being of such an integrated nature, should be

> (d) run, within the variations permitted by the agreement, or even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.

considered as one and the same product or good.

This conclusion is in accord with decisions of the Court of Appeals of Georgia[6] and the Court of Special Appeals of Maryland,[7] each of which having stated that " '[i]t is obvious that Coca-Cola bottles which would break under normal handling are not fit for the ordinary use which they were intended and that the relinquishment of physical control of such a defective bottle to a consumer constitutes a breach of warranty. * * ' "

We conclude that the determination of whether there was a contract for sale of the Dr. Pepper and whether the involved bottle of Dr. Pepper failed to meet the minimum requirements of merchantability should be made by the trier of fact. So, assuming an applicable provision of the statute of limitations has not barred plaintiff's cause of action, the plaintiff is entitled to go to trial as against the grocery company.

Here there are multiple defendants. In addition to the defendant retailer, the other is the bottling company which allegedly manufactured and distributed the Dr. Pepper to the retailer. Plaintiff asserts that he has a viable cause of action against both of these defendants. Defendant-bottler argues that plaintiff lacked privity of contract with respect to it and such privity is essential in a commercial code implied warranty action; and that any cause of action sounding in tort is barred by the two year statute of limitations. A Court of Appeals decision agreed and affirmed the trial court dismissal of the plaintiff's action as to Dr. Pepper.

---

5. Okl.Stat.Ann. tit. 12A, § 2–314(2), UCC Comment 6 (West)

6. *Fender v. Colonial Stores, Inc.*, 225 S.E.2d 695.

7. *Sheeskin v. Giant Food, Inc.*, 318 A.2d 885.

■ However, with that conclusion we cannot agree. At this point the issue is whether the UCC-based implied warranty of merchantability as to packaged food products (Section 2–314(1)), as hereinabove discussed, extends from the food packager to the consumer.

A review of the Oklahoma case law is appropriate. In *Hester v. Purex Corporation*, 534 P.2d 1306, 1308 (Okl.1975), we held that "the UCC section 2–318 [8] does not extend the coverage of its implied warranty of merchantability to employees of the purchaser." That case dealt with the lack of horizontal privity because the plaintiff as employee of the buyer lacked a contractual relationship with the seller. We noted that the Legislature has had opportunities to adopt either of two newly proposed alternatives to Section 2–318 [9] either of which would have greatly extended the coverage of that section to all persons reasonably expected to consume or use the goods.[10]

In *Hardesty v. Andro Corporation—Webster Division*, 555 P.2d 1030, 1034 (Okl.1976) we relied on *Hester, supra*, to deny recovery because plaintiff lacked vertical privity in that although plaintiff was in the direct chain of distribution he did not have a contractual relationship with the original seller. In that case plaintiff contracted with a local air conditioning contractor for the purchase and installation of a central air conditioning system for his apartment complex; the defendant-contractor in turn contracted for the purchase of the air conditioning system from the defendant-manufacturer. Upon experiencing major problems with the system plaintiff sought recovery of economic losses by suing both the contractor and manufacturer. Plaintiff argued that the protections of Section 2–318 should be extended to him as a person without privity through judicial decree. We declined to so hold, and stated the following standard:

> For [plaintiff] to have a cause of action based on contract against [manufacturer], there must be a contract directly between these two parties that carried with it a warranty, whether express or implied; or [plaintiff] must be a third party beneficiary [referring to Section 2–318] of those warranties to have benefit without privity (*supra* at 1033).

Since plaintiff failed to satisfy either of these conditions, we denied recovery and stated that

> [W]e refuse to extend the protection of warranties to those without privity other than as statutorily provided. . . . "Thus, until the Legislature elects to change this statute, we hold that the U.C.C. Section 2–318" should not be extended by judicial decision (*supra* at 1034).

The case at bar is distinguishable, in that it involves personal injuries sustained from food or drink. Today, we recognize remedies for such injuries by overlapping causes of action from both statutory law (e. g., Commercial Code, Section 2–314) and the developing case law (e. g., negligence, manufacturers' products liability). Plaintiff here was barred by the statute of limitations (12 O.S.1961, § 95, Third) from proceeding with a cause of action sounding in tort.

However, plaintiff did timely file a cause of action under Section 2–314. Section 2–318 extends that protection to members and guests in the consumer's household (i. e., horizontally); therefore, Section 2–318 does not apply in this (vertical) case. Furthermore, as Uniform Commercial Code Com-

---

**8.** UCC 2–318 provides: "A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section."

**9.** J.J. White, R.S. Summers, Uniform Commercial Code 331 (1972).

**10.** The distinction between Alternatives B and C to UCC 2–318 lie with respect to the injuries covered. Alternative B is limited to personal injuries, whereas, Alternative C is not so limited.

ment 3 suggests [11], Section 2–318 is neutral as to the privity requirement under other situations (e. g., the *Hardesty* case, *supra* ).

Rather, the case at bar is an implied warranty action, arising by operation of the Commercial Code, Section 2–314. We have previously adopted a rule that privity of contract is not required in food or drink cases where there is an implied warranty. This Court in *Jackson v. Cushing Coca-Cola Bottling Co.,* 445 P.2d 797, at page 799 (Okl.1968) restated (after the adoption of the UCC in Oklahoma) our rule as follows:

> The law in Oklahoma is well settled that a manufacturer or processor of food products under modern conditions *impliedly warrants* his goods when dispensed in original packages or bottles, and such warranty is *available to all* who may be damaged by their use *in the legitimate channels of trade*, including those who purchase them for resale. *Southwest Ice & Dairy Products v. Faulkenberry,* 203 Okl. 279, 220 P.2d 257, 17 A.L.R.2d 1373 [1950]. (Emphasis added).

This rule is precedent for the case before us today. The Legislature, we take it, was aware of the case law in Oklahoma at the time it enacted the Uniform Commercial Code, and that *Southwest Ice, supra,* defined the range of protections arising by operation of law as to the manufacture, processing, or distribution of food products.[12] Furthermore, the Legislature had directed that the principles of law and equity shall supplement the provisions of the Uniform Commercial Code (12A O.S.1961, § 1–103) and more generally that

> [t]he common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aide of the general Statutes of Oklahoma * * *. (12 O.S.1961, § 2).

The Commercial Code is such a general statute. Therefore, we conclude that as to implied warranties the rule of *Jackson, supra,* supplements and defines the implied warranty of merchantability arising by Section 2–314.

This conclusion is consistent with *Kirkland v. General Motors Corporation,* 521 P.2d 1353 (Okl.1974). Therein this Court adopted manufacturers' products liability which makes it unnecessary for plaintiffs to rely on implied warranty as a cause of action, rather the principle of manufacturers' products liability may be utilized. *Kirkland, supra,* still recognizes the Commercial Code as an independent basis for an implied warranty cause of action.

Therefore we hold that the implied warranty of merchantability as to food or drink arising under Section 2–314 may run from the defendant-bottler to plaintiff-consumer. Plaintiff did state a cause of action as against both Arlan's and Dr. Pepper. As above stated plaintiff filed his cause of action two years plus one day after the alleged breach of the implied warranty. Since this is within the five (5) year period for UCC actions (12A O.S.1961, § 2–725(1)), it was timely filed.

The decision of the Court of Appeals reversing the judgment of the trial court as to Arlan's and affirming as to Dr. Pepper is vacated and the judgment of the trial court is reversed for further proceedings.

REVERSED and REMANDED.

HODGES, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

LAVENDER, C. J., IRWIN, V. C. J. and OPALA, J., dissent.

---

11.  Okl.Stat.Ann. tit. 12A, § 2–314 (West)

12.  Oklahoma Code Comment (2), 12A O.S.A. § 2–314 (West) cites Southwest Ice as a pre-code *"merchantability"* case.