**Greathel REDWINE, surviving spouse of Earl Forrest Redwine, deceased, Appellant,**

v.

**BAPTIST GENERAL CONVENTION OF the STATE OF OKLAHOMA, an Oklahoma corporation; Greer, Carey, Zuhdi, Hawley, and Hartsuck, Inc., an Oklahoma corporation; James M. Hartsuck, M.D., individually; Travenol Export Corporation, a Nevada corporation; William Harvey Research Corporation, a subsidiary of C.R. Bard, Inc., a New Jersey corporation; and C.R. Bard, Inc., a New Jersey corporation, Appellees.**

Nos. 53775, 53941.

Court of Appeals of Oklahoma, Division No. 2.

Sept. 21, 1982.

Rehearing Denied Nov. 18, 1982.

Released for Publication by Order of Court of Appeals May 17, 1984.

John W. Norman, Ronald W. Horgan, Legal Intern, John W. Norman, Inc., Oklahoma City, for appellant.

Foliart, Mills & Niemeyer, Oklahoma City, for appellee Baptist General Convention.

Robert C. Margo, Oklahoma City, of counsel, Short, Barnes, Wiggins, Margo, Adler & Worten, Oklahoma City, for appellees Greer et al. and James M. Hartsuck, M.D., individually.

Gary L. Betow, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee Travenol Export Corp.

C. William Threlkeld, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, for appellees William Harvey Research Corp. and C.R. Bard, Inc.

BOYDSTON, Presiding Judge.

This appeal is companion to case No. 53,388, 679 P.2d 1293 (1983), both of which arise from Earl Forrest Redwine's wrongful death allegedly caused by medical malpractice. Both suits are brought by his widow, Greathel Redwine, against Baptist General Convention of the State of Oklahoma and Baptist Medical Center of Oklahoma, Inc. (Hospital) and Greer, Carey, Zuhdi, Hawley, and Hartsuck, Inc. (Surgeons). This suit, filed March 2, 1979, joins Travenol Export Corporation, William Harvey Research Corporation, and C.R. Bard, Inc. (Manufacturers) as defendant manufacturers of the allegedly defective oxygenator.

The essential facts are these: Mr. Redwine died on the operating table on March 9, 1976, during open-heart surgery because the heart-lung machine allegedly pumped air into his aorta instead of blood. In addition to the allegations of fault, Mrs. Redwine alleged in the first case that Surgeons and Hospital fraudulently concealed the true cause of his death and that the statute of limitations was tolled until the date these facts were made known. We reviewed the pleadings and applicable statutes and concluded in that case that the statute of limitations was tolled until she discovered sufficient facts to put her on notice of the true facts and sent it back for trial on its merits.

In the instant appeal Mrs. Redwine appeals judgment sustaining special demurrers in favor of Hospital, Surgeons, and Manufacturers. Taking an alternative tack from the prior action, she alleged a "sale"[1] occurred when the defendants used the heart-lung machine and charged for its use. By doing so, she attempts to bring herself within the protection of Uniform Commercial Code implied warranty provisions, 12A O.S.1981 §§ 2–314 to 318, and more particularly, within its five year statute of limitations.[2] All defendants relied on the two year wrongful death statute of limitations, 12 O.S.1981 § 1053, and denied the transaction was a "sale" by definition.

The following issues are raised on appeal:

1. Are doctors and hospitals liable for breach of implied warranty under the UCC for defective equipment used in the course of treatment?

2. Is the use of equipment for hire in an operating room a "sale" within the meaning of the UCC?

Similar issues have been previously addressed by the supreme court, but this application to operating room equipment appears to be a case of first impression. Title 12A O.S.1981 §§ 2–314 and 315, provide an implied warranty of fitness and merchantability of goods for their ordinary use. Section 2–318 limits the warranty to "any natural person who is in the family or household of his buyer or who is a guest in his home ...." This limitation has been termed a "horizontal"[3] extension of the warranty. See Hardesty v. Andro Corp.-Webster Div., Okl., 555 P.2d 1030 (1976), in which the court refused to permit recovery by the owner of a construction project against the manufacturer of defective air conditioner parts. That decision turned on "lack of privity" between the manufacturer and the ultimate purchaser. It was later declared to be an erroneous decision in Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc., Okl., 604 P.2d 849 (1979),

wherein the court declared the ultimate purchaser of defective goods is entitled to recover from the manufacturer for breach of an implied warranty of merchantability regardless of lack of "privity" between it and the manufacturer. The court determined that the ultimate purchaser is properly within the ambit of the "vertical" chain of sale and is entitled, as a matter of policy, to Code protection.

The protection afforded to the purchaser of defective carpet in Old Albany is an extension of rulings previously made applicable to buyers of pre-packaged edibles. Barker v. Allied Supermkt., Okl., 596 P.2d 870 (1979); Jackson v. Cushing Coca-Cola Bottling Co., Okl., 445 P.2d 797 (1968); Southwest Ice & Dairy Products v. Faulkenberry, 203 Okl. 279, 220 P.2d 257 (1950).

"Horizontal" protection; i.e., remedy for those other than the purchaser, has been strictly limited to the statutory confines of the family, invitees, and household of the purchaser under § 2–318. For example, see Moss v. Polyco, Inc., Okl., 522 P.2d 622 (1974), in which a restaurant customer was injured by a defective container of drain opener that came open and splashed on her when it fell from a shelf. The customer was denied recovery under an implied warranty theory because, as a bystander, she had no contractual privity with the manufacturer.

In Hester v. Purex Corp., Okl., 534 P.2d 1306 (1975), the court held an injured employee of purchaser is outside the pale of protection as prescribed by the legislature. It declared that the legislature had deliberately declined to extend § 2–318 outside the household, and the court declined to liberalize the protection on its own. It pointed out that an injured party who finds himself outside the "horizontal" scope of § 2–318 is not without remedy because he has suitable alternatives under the theories of negligence and manufacturers' products

---

1. Title 12A O.S.1981 § 2–101, et seq.

2. Title 12A O.S.1981 § 2–725.

3. See discussion distinguishing horizontal from vertical privity in Morrow v. New Moon Homes, Inc., Alaska, 548 P.2d 279, 287 (1976).

**1124**

liability. *Kirkland v. General Motors,* Okl., 521 P.2d 1353 (1974), although both have a two year statute of limitations. 12 O.S.1981 § 95(3).

 Therefore, the dispositive issue is whether charging a patient for use of medical equipment (heart-lung oxygenator) is a "sale" within the meaning of §§ 2–314 and 315. We hold that it is not. This issue has been decided directly in other jurisdictions, and the great weight of authority holds that doctors and hospitals who furnish and use these products are principally engaged in the furnishing of *services* and are themselves the ultimate purchasers. The use of the equipment under these circumstances is merely incidental.[4]

We hold that such a transaction does not constitute a "sale" within the meaning of the Code and that Mrs. Redwine's remedy is limited to either a theory of negligence or that of manufacturers' products liability. These actions must be brought within two years from the date of injury, and failing that, they are barred. 12 O.S.1981 § 95(3).

In this case, as contrasted with the companion case, there is no allegation that defendant Manufacturers fraudulently concealed the facts surrounding the death. We, therefore, sustain the judgment of trial court.

Judgment affirmed with costs taxed against Mrs. Redwine.

BRIGHTMIRE, J., concurs.

BACON, J., concurs specially.

BACON, Judge, concurring specially in result.

I concur in the result reached by the majority but for different reasons. Under Oklahoma law any right of action surviving a decedent exists solely by virtue of statutory enactment. Title 12 O.S.1981 § 1053, commonly referred to as Oklahoma's Wrongful Death Statute, requires "[t]he action must be commenced within two (2) years." I assume this means within two (2) years from the date of death.

In the present case the action was not brought within two years from the date of death. It is the plaintiff's position that the defendants fraudulently concealed the facts surrounding the death of her husband. It should therefore follow that even though the statute of limitations has run on a suit against the manufacturer, the other defendants should be liable for the amount of damage plaintiff could have recovered from the manufacturer, but for the statute of limitations having run. That is to say, if defendants did fraudulently conceal the facts from plaintiff; and if manufacturer did not take part in that concealment; and because the statute of limitations ran against manufacturer, then plaintiff should be entitled to recover from defendants as an additional item of damage those damages plaintiff could have recovered from manufacturer but for the other defendants' fraudulent concealment that allowed the statute of limitations to run on plaintiff's lawsuit.

I would also like to point out what I feel is a major flaw in our law pertaining to actions for breach of warranty that possibly our supreme court or the legislature may want to consider. That flaw comes about as to items *sold which the purchaser itself will never use as intended,* but which will only be "used" by purchaser's patients, clients or customers. This case, in my opinion, is a classic example of what I refer to. The "purchaser" of the heart-lung machine, be it hospital, doctor, clinic, etc., will never be the "consumer" or "user" that would be damaged by a defective machine, but only the unconscious patient will be the party affected. The cases referred to in the main opinion refer to the so-called "vertical" and "horizontal" chain for determining whether a party can maintain an action for breach of warranty. One must be in the "vertical" chain to maintain the action.

4. Liability of a hospital or medical practitioner under the doctrine of strict liability in tort or breach of warranty for harm caused by a drug, medical instrument, or similar device used in treating the patient is discussed in 54 A.L.R.3d 258 (1973). *See generally,* 100 A.L.R.3d 1205 (1980); 35 A.L.R.3d 1068 (1971); 14 A.L.R.3d 1254 (1967); 79 A.L.R.2d 401 (1961).

I submit that we need a "diagonal" chain as an exception. The diagonal chain would be an exception wherein the item purchased is one referred to above that virtually no person in the vertical chain would ever be the user/consumer of. Such items normally would be part of service related occupations or professions where the purchaser buys the item to use on persons other than the purchaser. I would therefore suggest the "diagonal" exception to the cases permitting only "purchasers" in the vertical chain to maintain an action for breach of warranty. Until such exception is recognized or legislated a "warranty" on such items is virtually meaningless. The purchaser (and those in the vertical chain) will never be the ultimate user/consumer of the item. Because the "user/consumer" is not in the vertical chain *no action* for breach of warranty could be maintained by any person—thus any warranty is meaningless.