**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff–Counter–Defendant–Appellant,**

v.

**EVERETT A. HOLSETH & COMPANY, a Texas corporation, Defendant–Counter–Plaintiff–Appellee.**

**Federal Deposit Insurance Corporation, in its corporate capacity, Plaintiff–Appellant,**

**Richard A. CLINE, Intervenor,**

v.

**EVERETT A. HOLSETH & COMPANY, a Texas corporation, Defendant–Appellee,**

and

**John Does, I through LXX, Defendants.**

**Nos. 93–6153, 93–6215.**

United States Court of Appeals, Tenth Circuit.

Oct. 4, 1994.

---

Lance Stockwell (Sheila M. Powers, also of Boesche, McDermott & Eskridge, Tulsa, OK, John L. Paulhamus, F.D.I.C., Dallas, TX, of counsel, Edward J. O'Meara, F.D.I.C., Washington, DC, with him on the briefs), for appellants.

Robert G. Green (Jon B. Wallis with him on the briefs), Tulsa, OK, for appellee.

Before SEYMOUR, Chief Judge, LOGAN and ANDERSON, Circuit Judges.

LOGAN, Circuit Judge.

The Federal Deposit Insurance Corporation (FDIC) appeals two separate judgments arising from its action for declaratory relief in a contract dispute with Everett A. Holseth & Company (Holseth).

In No. 93–6153, the FDIC asserts that (1) Holseth failed to present sufficient evidence of breach of contract; (2) Holseth failed to present sufficient evidence of damages; and (3) the district court erred in bifurcating certain issues and refusing to admit evidence concerning a settlement at the trial on Holseth's breach of contract claim. In No. 93–6215, the FDIC alleges that the district court erred (1) in concluding that the FDIC was not a real party in interest and that it could not. stand in place of the other interest owners; and (2) in determining that the contract between the FDIC and Holseth obligated the other interest owners to pay Holseth a fifty percent contingency fee. Holseth seeks to dismiss No. 93–6215, asserting that both the district court and this court lack jurisdiction because the FDIC is not a real party in interest.

I

Although these cases involve complicated oil and gas pricing concepts and extensive trial testimony, we limit our discussion to the facts relevant to our review. In December 1988, the FDIC contracted with Holseth to audit and collect money due the FDIC under oil and gas audit adjustment rights.[1] That contract provided that Holseth would evaluate, quantify and collect sums due the FDIC from others, in return for which Holseth would receive, after the first $25,000, fifty percent of all sums collected during the term of the agreement. The contract continued for a two-year term beginning December 29, 1988. It listed accounts for Holseth to collect; other accounts were added later by written amendment. The FDIC retained exclusive control over approval of settlements resulting from collection efforts. The contract was nonexclusive in that the FDIC could collect the same accounts during the contract term without sharing the proceeds with Holseth. The contract limited accounts within its coverage to those of $2,500,000 or less, or to claims which would each compensate Holseth no more than $250,000. Holseth's compensation for claims outside those limitations were to be negotiated separately.

Holseth audited and gathered information on the accounts, providing the FDIC with monthly updates on the estimated amounts of claims. Some claims were settled. Then in October 1990, two months before the con-

---

1. The contract adjustment rights involved the right to collect royalties wrongfully withheld be-fore the date of the sale of oil and gas properties.

tract was to expire, the FDIC wrote Holseth a letter stating that Holseth should cease negotiations on one particular contract and that the FDIC itself would negotiate "all future settlements." Appellant's App. 232. In December 1990, Holseth presented the FDIC with a list of claims for settlement, including its valuation of each claim. Apparently the FDIC has never settled most of these claims. The FDIC did not renew the contract with Holseth.

In 1991 the FDIC acknowledged that it owed Holseth approximately $295,000 for a settlement in the Swan account which Holseth had audited. The FDIC did not pay Holseth, however, because of disputes arising from other settlements. After negotiations failed, the FDIC brought this declaratory judgment action, asking the district court to resolve the disputes arising from the Holseth contract. Holseth counterclaimed for breach of the contract, for an accounting, for a declaration of Holseth's rights to the deposited funds, and, later, on the alternative theory of recovery on a quantum meruit basis.

The FDIC then filed an amended complaint asserting that Holseth had wrongfully paid itself over $450,000 of a so-called Anderson–Valero settlement which Holseth held in trust for distribution to the royalty owners. The FDIC asked for this amount to be withheld as a set-off against any money due Holseth from funds on deposit with the district court. The FDIC also asked the district court to set up a notification and claims procedure to determine the amounts due the royalty owners from the Anderson–Valero funds and for a declaration that the FDIC was not liable to the royalty owners for the settlement proceeds retained or entrusted to Holseth. The district court bifurcated the issues concerning the Anderson–Valero settlement from the breach of contract claim.

The Holseth breach of contract claim was tried to a jury, which awarded Holseth damages of $1,250,000. The district court denied post-trial motions and entered judgment for Holseth. Appeal No. 93–6153 concerns this judgment and the order bifurcating the Anderson–Valero settlement.

Later, the district court entered judgment on the Anderson–Valero issues. It concluded the FDIC was not a real party in interest. But it then declared that the Holseth contract covered all of the Anderson–Valero settlement funds and, therefore, Holseth was entitled to fifty percent of the entire fund.[2] Appeal No. 93–6215 addresses those decisions.

II

*No. 93–6153*

A

The FDIC first asserts that the district court erred in submitting the breach of contract issue to the jury because Holseth failed to present sufficient evidence on which a jury could find a breach of contract. Holseth's claim was that the FDIC prevented Holseth from performing the contract, and breached its duty of good faith and fair dealing. *See* Jury Instructions 9, 10 (Holseth's Answer Brief 4–5). "[A] party to a contract may not prevent performance of a condition and then claim the benefit of such condition." *Townsend v. Melody Home Mfg. Co.,* 541 P.2d 1370, 1374–75 (Okla.Ct.App.1975) (holding manufacturer of mobile homes could not deny dealer incentive bonus based on late payment when manufacturer was involved with finance company in delaying payment); *see also Dayton Hudson Corp. v. Macerich Real Estate Co.,* 812 F.2d 1319, 1323 (10th Cir.1987) (party to contract may not deliberately prevent condition and then take advantage of failure of condition to avoid liability).

Holseth's evidence established that in October 1990, the FDIC informed Holseth it could no longer pursue the settlements but was only to provide accounting information for the FDIC to proceed to settlement. Holseth presented evidence that the FDIC did not cooperate in Holseth's attempts to conduct audits in September 1990; also that the FDIC took records belonging to Holseth and

---

**2.** The court dismissed the FDIC's application for establishment of a claims procedure for the funds in question, and ordered the deposited funds be returned to Holseth for disbursement to the working interest owners. The district court stayed this order pending appeal.

denied Holseth access to FDIC materials it needed to pursue the claims. Although the FDIC presented credible evidence to the contrary on each of these claims, it is the jury's province to resolve conflicts in the evidence. The evidence Holseth presented would support a jury finding that the FDIC breached the contract by preventing Holseth from performing and by acting in bad faith. *See Townsend,* 541 P.2d at 1374–75. The district court did not err in submitting the breach of contract issue to the jury.

### B

The FDIC strenuously argues that the issue of damages should not have been submitted to the jury, and that the jury award was based on "gross speculation." FDIC Opening Brief at 20–21. It also argues that Holseth presented insufficient evidence of damages to sustain the jury verdict.

"When a jury verdict is challenged on appeal, our review is limited to determining whether the record—viewed in the light most favorable to the prevailing party—contains substantial evidence to support the jury's decision." *Western Gas Processors, Ltd. v. Woods Petroleum Corp.,* 15 F.3d 981, 987 (10th Cir.1994) (quoting *Comcoa, Inc. v. NEC Telephones, Inc.,* 931 F.2d 655, 661 (10th Cir.1991)).

Oklahoma law provides that the measure of damages in a breach of contract action is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Okla.Stat.Ann. tit. 23, § 21 (West 1987). "Although the jury may not speculate about the fact of damages," *Transpower Constructors v. Grand River Dam Auth.,* 905 F.2d 1413, 1416 (10th Cir. 1990), "uncertainty about their exact amount will not preclude recovery." *Id.* (citations omitted). "Once a party has established the fact of damages, moreover, 'it is proper to let the jury determine what the loss is from the best evidence the nature of the case admits.'" *Id.* (quoting *Southwest Ice & Dairy Prods. Co. v. Faulkenberry,* 203 Okla. 279, 220 P.2d 257, 261 (1950)).

Our review of the record reveals sufficient evidence to support the jury award of $1.25 million. Holseth provided testimony and documentary evidence establishing that, under the contract, it could have realized compensation of several million dollars. Although the FDIC witnesses, especially their certified public accountant, attempted to discredit these numbers, it was within the province of the jury to determine the facts and weigh the evidence.

### C

The FDIC's final argument on the contract issue is that the district court erred in bifurcating the trial so that the jury did not receive evidence concerning the Anderson–Valero settlement. District courts have "broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *Green Constr. Co. v. KPL,* 1 F.3d 1005, 1011 (10th Cir.1993) (citation omitted). The FDIC asserts that the issues in the Anderson–Valero claims were interwoven with the Holseth contract so that the bifurcation caused jury confusion. But the mere fact that the trial court necessarily relied on the Holseth contract in determining the Anderson–Valero claims does not mean the issues had to be tried together to achieve fairness. The district court did not abuse its discretion in bifurcating these issues.

### III

#### No. 93–6215

On the appeal of the judgment relating to the Anderson–Valero settlement, the FDIC alleges that the district court erred in concluding that the FDIC was not a real party in interest. It also challenges the court's holding that the FDIC's contract with Holseth for a fifty percent fee applied to the entire $800,000 Anderson–Valero settlement, instead of only to the twenty-six percent beneficially owned by the FDIC. It alleges that the court erred when it refused to adjudicate Holseth's right to take a trustee's fee from settlement funds Holseth held for the benefit of the other royalty owners. Holseth moved under Fed.R.App.P. 27 to dismiss ap-

peal No. 93–6215 for lack of appellate jurisdiction, quoting the district court's finding that the FDIC "is not the real party in interest, but even if FDIC were the real party in interest, there is no justiciable controversy or ripe claim to adjudicate." Appellant's App. 117.

The factual background relevant to the issues before us in this appeal is as follows. The FDIC several years ago acquired the stock of Anderson Pipeline Company and Anderson Petroleum Company, whose assets included claims against Valero Transmission Company for payments due for interests in gas purchase contracts. These claims were listed as accounts in the Holseth contract. The Anderson companies owned, and the FDIC acquired, a twenty-six percent beneficial ownership interest in the Valero claims. In August 1989, the FDIC entered a settlement with Valero for $800,000 on behalf of all interest owners. The source of its authority to represent the other interest owners is not in the appellate record. But the settlement agreement "represents and warrants" that in addition to the FDIC's twenty-six percent beneficial interest

> it has the sole authority to settle all claims and disputes as to the Subject Matter of this Agreement for one hundred (100) percent of the interests in and to the Contracts, including the sufficiency of any settlement amounts, both for itself, its predecessors in interest, working interest owners, and royalty interest owners, from inception up to and including July 31, 1987.

Appellant's App. 246. In the settlement the FDIC also agreed to indemnify Valero, its officers and agents from any "claims, damages, or causes of action" brought by others asserting rights in "the Subject Matter of this Settlement Agreement." *Id.* at 247.

Holseth was a party to the Valero settlement, agreeing to take the $589,600 owing to beneficial owners other than the FDIC, and "to act as trustee and to distribute to all parties who may be entitled to a share." *Id.* at 245A.

The FDIC received its twenty-six percent share as beneficial owner, and paid Holseth fifty percent of that for its fee. Shortly thereafter Holseth paid itself half of the remaining settlement funds, claiming the whole settlement was subject to its fifty percent contract with the FDIC. Later, Holseth paid itself an additional $166,736 for services rendered in administering the trust for the other interest owners. In its amended complaint, the FDIC asserted a set-off against other funds from a previous settlement on which it had withheld payments due Holseth, to cover the funds that the FDIC contended Holseth wrongfully kept from the Valero settlement.

The FDIC asserted that its own contract with Holseth did not bind the third party interest owners—hence Holseth was not entitled to fifty percent of the whole $800,000 settlement. It also contended that the Valero settlement agreement did not provide for any payment to Holseth for its services as trustee—hence Holseth wrongfully paid itself the $166,736 for trustee's services. The FDIC asserted that the other interest owners in the Valero claim might seek to hold the FDIC liable for the funds allegedly illegally retained by Holseth; it therefore asked the district court (1) to order Holseth to deposit the Valero settlement funds into the court, (2) to make an accounting, (3) to declare that Holseth was not entitled to any portion of the settlement funds paid for the benefit of the other Valero interest owners, whether as a percentage or for trustee services; and (4) to declare that the FDIC is not liable to the other Valero interest owners for any settlement proceeds retained by Holseth. The FDIC also asked the court to establish a "notification and claims procedure" by which the third party interest owners could present claims to the funds and payment could be ordered from the deposited funds.

The district court held that the FDIC was not a real party in interest, dismissing its set-off claims and application for an order establishing a claims procedure. It nevertheless found that the contract the FDIC entered with Holseth was on behalf of the third party owners and bound them to the fifty percent fee on the interests they were to receive. Because the FDIC was not the real party in interest, the court declined to ad-

dress the issue whether Holseth wrongfully retained the trustee's fees.[3]

The court found that the FDIC had the authority to make the settlement on behalf of all interest owners and to disburse the funds. *See* Memorandum Opinion at 2, Appellant's App. 113 ("FDIC was authorized by all interest owners to make and disburse a settlement of these contract rights"). In holding that the FDIC bound the other Valero interest owners to pay Holseth's fifty percent fee, the court necessarily found the FDIC was their agent with authority to hire Holseth to assist in negotiating the settlement. But in holding that the FDIC had no interest in the disbursements to the other interest owners under the Valero settlement, the court necessarily found that the FDIC's agency relationship—or at least its responsibilities with respect to the settlement—ended when it signed the settlement naming Holseth as trustee to hold the funds and make the distributions to those other interest owners; this despite the court's statement that the FDIC had authorization to "disburse" settlement proceeds to the other interest owners.[4]

An agent that negotiates an agreement satisfactory to and executed by its principal might well be discharged from any further responsibility, and thus have no continuing interest in the transaction. But here the FDIC was the signatory party to the agreement. Hence it would seem to have a continuing interest in it, and a continuing agency relationship with the other interest owners, until the agreement is fully carried out. At least Holseth, hired by the FDIC and a party to the settlement agreement reciting the FDIC's representative capacity, is in no position to challenge that capacity.

The FDIC is clearly in a vulnerable position: if Valero can be sued by any other interest owners, the FDIC must indemnify Valero; if there is a continuing agency relationship—like the operator under a joint operating agreement—the FDIC would be the representative of these owners in holding Holseth to its duties under the settlement agreement. If the FDIC had the authority to hire Holseth on behalf of the other owners, as the court held, the FDIC would be liable if Holseth was a particularly poor choice to serve as trustee. Thus, the court was wrong in declaring that the FDIC was not a real party in interest. Although the court cannot adjudicate claims the nonparty interest owners might have against Holseth, the FDIC, or Valero, it can and should determine the rights among the parties to the Valero settlement contract.

The FDIC's contract with Holseth, which is the apparent basis of the claim to a fifty percent fee on the entire Valero settlement, says nothing about binding other interest owners for whom the FDIC might have an agency relationship. The FDIC, however, represented in the Valero settlement that it could bind the other interest owners. Thus, it alleged an agency relationship, and acting as that agent it agreed to Holseth's service as trustee to distribute money to other owners. In this context, an agent that can bind its principal to a settlement presumably has power to hire assistance in negotiating and carrying out that settlement. Presumably also Holseth would not have undertaken to perform services without compensation. But we find no evidence in the record of what that compensation was to be—whether a fifty percent fee for helping negotiate the agreement plus a trustee's fee as Holseth claims, or only one of those fees, or some other arrangement. We must remand for the court to reconsider this issue.

Because Holseth is in no position to challenge the FDIC's posture as representative of the other interest owners—as set out in the contract to which it was a party—the district court also should have determined, for the FDIC's benefit, Holseth's duties under the settlement contract, which would in-

---

3. The district court then ordered that the deposited funds be returned to Holseth for disbursement to the working interest owners.

4. The FDIC provided very little help to the court by taking confusing if not inconsistent positions—stating that it represented the third parties and yet asserting it would bring those parties in as defendants (and failing to do so). The FDIC also argued Holseth should not receive the fifty percent contingency but yet acknowledged "a certain logic in the working interest owners paying the same commission FDIC paid to Holseth." Appellant's App. 25.

clude whether it was entitled to the trustee's fee it took. The court, of course, could not resolve claims nonparty interest owners might have against the FDIC for breach of its duties to them in connection with this settlement agreement.

We AFFIRM the district court's judgment in appeal No. 93–6153; we AFFIRM in part and REVERSE in part its judgment in appeal No. 93–6215, and REMAND for further proceedings.